**UNITED STATES of America,**
**Appellee,**

v.

**Domingo MANUEL–BACA, Appellant.**

**No. 23079.**

United States Court of Appeals,
Ninth Circuit.

Jan. 26, 1970.

Alan Saltzman (argued), Hollywood, Cal., for appellant.

Jo Ann D. Diamos (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and BYRNE*, District Judge.

BYRNE, District Judge:

Appellant Baca was convicted of violating 21 U.S.C. § 174, by verdict of a jury.

On October 14, 1967, about 9:00 P.M., a Nogales, Arizona, police officer, Sgt. Salmon, saw Baca and a companion named Duran, coming down a steep hill near the International Boundary. There was no roadway or path on the hill, "It is just grass". The boundary is marked with an 8-foot fence. In October, 1967, in the area in which Baca and Duran were seen descending the hill, there were three holes in the fence—one about half

---

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

way up the hill, one three-quarters of the way, and the third, a big hole, was "way up the hill".

When Baca came off the hill he took off his coat and folded it on his right arm. As Salmon approached the two men Baca started to walk away. Salmon ordered him to return to the sidewalk with Duran. He did so and "hanged" his coat on his left shoulder. When Salmon asked for identification, Baca first opened his coat by placing both hands within the garment. At this point Officer Salmon noticed the reflection of "something shiny" inside the coat. Baca then dropped his hand and reached into his shirt pocket and handed Salmon his driver's license. When asked what they were doing in that area, they stated "they were looking for their car, they had parked it behind the hotel".

Salmon left Baca and Duran and went to his patrol car to radio customs agents. During his absence, Baca and Duran moved about 18 feet from where Salmon had left them. Two border patrol agents responded to the call and took Baca and Duran into custody. One of the agents and Salmon examined the area where Baca and Duran had been standing when Salmon left them to make the radio call. Salmon found a contraceptive wrapped in cellophane on the sidewalk. The contents were later identified as heroin. Inspector Hamilton testified, "I wouldn't describe it as a shiny object, it had a certain amount of reflection to it. It was not shiny or dull either one." On cross-examination Inspector Judkins, in reply to the question, "Would you describe it as a shiny object?" stated, "Yes, cellophane paper with a light on it, yes, it would be shiny."

In reply to a question about the condition of the sidewalk at the time Salmon first approached Baca and Duran, the officer testified, "There was nothing on the sidewalk at the time, not a single piece of paper." On cross-examination he was asked whether he made any "particular effort to observe the state of the

sidewalk". His answer was, "For my own sake, every time I stop somebody I check where I am going to stop them, I see there is nothing there." On re-direct, Salmon testified, "I had seen the area before. When I stopped them I did observe that the area was clean of any papers or anything and there was not a sheet of paper on the sidewalk."

It was also established that there were seven street lights operating in the area, a floodlight on the Mexican side and a light behind the Kress store; that the area is deserted after 6:00 P.M. when the stores close; that there were no cars parked in the area, and no one was around except the officers, Baca, and Duran.

■ Reviewing the evidence in the light most favorable to the Government, as we must (Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680) the circumstantial evidence in this case is extremely persuasive. Certainly the jury could find beyond a reasonable doubt that either Baca or Duran dropped this cellophane package of heroin valued at more than $300.00. Their story of searching for their car on a steep hill along a border fence with three holes in it, where there was no road or path, was devoid of plausibility. The jury could also find beyond a reasonable doubt that it was Baca who dropped the heroin. It was he who had the "shiny" object within his folded coat (Duran was not wearing a coat or jacket). The cellophane package containing heroin was found where Baca and Duran were left standing when Salmon left them to make his radio call for customs agents. The evidence is uncontradicted that there was nothing on the sidewalk when Salmon left to make his call—"the area was clean of any papers or anything and there was not a sheet of paper on the sidewalk."

■ Only when there is an absence of probative facts to support the conclusion reached by the jury, who have been properly instructed on the doctrine of reasonable doubt, does a reversible error

appear. All that is required is an evidentiary basis for the jury to decide whether, beyond what they believe to be a reasonable doubt, the accused is guilty of the charge. It is immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable. See, Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572, 10 S.Ct. 1044, 34 L.Ed. 235; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S. Ct. 444, 87 L.Ed. 610; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 87 L.Ed. 1444; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520.

In a recent case[1] Judge Barnes said: "If the district court's fact finding process is to retain any integrity or uniformity, it must be respected by appellate courts." He is wisely stating the fundamental principle that in courts of justice certain functions belong to jurors while others are the responsibility of judges and each should adhere to his own. The Supreme Court has said the same thing but never any better or more clearly.

Affirmed.

HUFSTEDLER, Circuit Judge (dissenting):

I respectfully dissent.

This court, of course, cannot usurp the function of the jury in deciding factual issues. Neither can it abdicate its duty to review the sufficiency of the evidence to sustain a jury's determination of guilt.

"The verdict in a criminal case is sustained only when there is 'relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,' that the accused is guilty. Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 1040, 88 L.Ed. 1331." (American Tobacco Co. v. United States (1946) 328 U.S. 781, 787 n. 4, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575).

That evidence is missing here.

I can accept the majority's conclusion that the evidence, albeit thin, was sufficient to have sustained a finding that either Baca or Duran had possession of the heroin and that the possessor dropped it on the sidewalk. But I cannot join in the conclusion that the evidence was sufficient to sustain the jury's decision that Baca was that possessor.

The sole evidence in the record to which the majority can advert to sustain the jury's necessary finding that Baca was the possessor is the testimony of Officer Salmon that he saw something shiny in Baca's coat and the testimony of Inspector Jenkins that the packet of heroin was shiny. That Baca was the possessor depended upon proof that the object Salmon saw in Baca's coat was the packet of heroin later found on the sidewalk. Officer Salmon was the only witness who saw both the object in Baca's coat and the heroin packet. He and he alone would have known if he had perceived any resemblance between the two objects. Yet, he did not identify the objects as the same. His testimony was that he could *not* identify the thing he saw in the coat. He could say only that "it was something shiny."

The question is: Could the jury permissibly infer that the object in Baca's coat was the heroin packet from the testimony that the unidentified object in the coat was shiny? I think not. An inference that an identified object is the same as an unidentified object cannot arise from proof alone that both objects are shiny. The quality of shining is not a signature; there is nothing unique or even unusual about it. A decision that the packet of heroin was the object seen

---

1. Wagner v. United States (C.A.9) 418 F.2d 618, decided November 19, 1969, dissenting opinion by Judge Barnes.

in Baca's coat is not based on an inference; it is simply a guess. A guilty verdict cannot be sustained by guesses, first or second hand.

I would reverse the conviction.