515 F.2d 877
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Waring MARRIFIELD, John Hobart McEarchern, Roy Wayne
Nelson, Sam Lee Presley, Joseph Paul Poulos, Jr.,
and Albert Lowry Slaughter, Defendants-
Appellants.
 No. 73-3464.
 United States Court of Appeals,
Fifth Circuit.
 July 9, 1975.
 
 Thomas M. Haas, Mobile, Ala. (Court-appointed), for Marrifield, McEarchern, Poulos, Slaughter.
 John G. Corlew, Pascagoula, Miss., for Poulos on rehearing.
 Fielding L. Wright, Pascagoula, Miss., for Marrifield on rehearing.
 Charles White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Alabama.
 Before AINSWORTH, GODBOLD and SIMPSON, Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 A jury found the six appellants, Robert Waring Marrifield, John Hobart McEarchern, Roy Wayne Nelson, Sam Lee Presley, Joseph Paul Poulos, Jr. and Albert Lowry Slaughter guilty of unlawfully conducting a gambling business, in violation of Title 18, U.S.C., Section 1955.[1] We find all specifications of error to lack merit and affirm.
 
 
 2
 The points urged on appeal include, (1) that the prosecution failed to establish that appellants' enterprise satisfied the five man/thirty day jurisdictional requirements of Section 1955; (2) that the district court improperly denied their consolidated motions to suppress physical evidence seized during an F.B.I. raid of the trailer site of the operation on the ground that the affidavit for the search warrant served during the raid did not allege sufficient facts to establish probable cause to believe that the five man/thirty day jurisdictional requirements were met; (3) that the trial judge improperly instructed the jury that Section 1955 prohibited a gambling business of a size which reasonably required or involved the active participation of five or more persons; and (4) that the indictment was defective for failure to detail the manner in which state law was violated.
 
 
 3
 The principal challenges of the various appellants spin off from their central contention that their enterprise failed to satisfy the federal statute's jurisdictional prerequisites of criminal involvement by five or more individuals for a period in excess of thirty days. We review the evidence first with regard to appellants Presley, Nelson, Slaughter, Marrifield and McEarchern. Because Poulos' challenge presents a variant legal question, we assess his involvement separately.
 
 
 4
 Viewed most favorably to the government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, the evidence established that a gambling operation involving the placing and acceptance of bets on dice and cards, was conducted in a trailer located in a remote area near Lillian, Alabama, near the Alabama/Florida line. Presley, Nelson, and Slaughter were active in the enterprise from August 12, 1972 to March 2, 1973,[2] Marrifield from August 11, 1972 to December 1, 1972,[3] and McEarchern from August 12, 1972 to at least December 1, 1972.[4]
 
 
 5
 While the evidence showed that the individual appellants freely interchanged their roles, it also established that the gambling operation generally consisted of two bankers who handled the poker chips and money at a green, felt-covered gaming table, a stickman who wielded an L-shaped stick to clear the table of dice and chips, and a manager/relief man. Despite the fact that F.B.I. agents and other witnesses had observed each of the appellants engaged in the operation on various occasions, the record did not demonstrate that more than four were actually present and working in the trailer at any time.
 
 
 6
 From this factual foundation, appellants contend that their gambling venture was not proscribed by Section 1955. Although they recognize that five participants need not be physically present in the same room to satisfy the five person statutory requirement, they urge that we construe the statute to require that five persons must be simultaneously involved in the conduct of the illegal gambling operation. They argue also that Congress did not intend to regulate an operation where only four persons are needed to run it at any one time.[5] Thus, even though the proof was that the five, still excepting Poulos, were involved in the operation of the business in the same thirty day period, they urge that they are beyond the statute's reach because the government failed to prove that the fifth man when rotated out still actively aided in the conduct of the game.
 
 
 7
 Because the degree of participation intended to be proscribed as criminal by Section 1955 is nowhere therein defined, courts considering this issue have looked for guidance to the legislative history of Title 18, U.S.C., Section 1511, a parallel, simultaneously enacted provision of the Organized Crime Control Act, which describes an "illegal gambling business" in identical terms to the language of Section 1955. These two statutes have been construed to be in pari materia. See, e. g., United States v. Harris, 5 Cir. 1972, 460 F.2d 1041, cert. denied 1973, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130; United States v. Ceraso, 3 Cir. 1972, 467 F.2d 653, 656; United States v. Becker, 2 Cir. 1972, 461 F.2d 230, vacated on other grounds, 1974, 417 U.S. 903, 94 S.Ct. 2597, 41 L.Ed.2d 208; United States v. Riehl, 3 Cir. 1972, 460 F.2d 454.(Section 1511) applies generally to persons who participate in the ownership, management, or conduct of an illegal gambling business. The term "conducts" refers both to high level bosses and street level employees. It does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet.
 
 
 8
 1970 U.S.Code Congressional and Administrative News, p. 4029. As the Second Circuit has declared
 
 
 9
 Congress' intent was to include all those who participate in the operation of a gambling business, regardless how minor their roles and whether or not they be labelled agents, runners, independent contractors or the like, and to exclude only customers of the business.
 
 
 10
 United States v. Becker, supra, 461 F.2d at 232.
 
 
 11
 We hold that the strained statutory construction urged by the appellants is counter to the stated legislative purpose and would if followed emasculate the Act. All the evidence need demonstrate is that five or more participated in whole or in part during the more than thirty day period when the gambling business was in substantially continuous operation. Appellants apparently considered a relief man to be necessary to the effective operation of their business. The fact that only four of them were engaged at any particular time in running a business which contemplated and took advantage of the active participation of five is without decisional significance here.
 
 
 12
 Appellants' misconception of the reach of Section 1955 dooms their attack on the trial court's instructions to the jury.
 
 
 13
 Likewise put at rest is their challenge to the sufficiency of the affidavit supporting the issuance of the search warrant, as not setting forth facts supporting the violation of Section 1955 in showing participation by five or more persons at any one time. The affidavit, 14 single spaced pages in length, executed by Special Agent Donald A. Flynn, detailed with precision his observations of the conduct of the enterprise and its participants on August 12, 1972, observations by a confidential source on numerous occasions prior to and after that date, as well as the observations of other special agents working under Flynn's direction on each of the dates set forth in the text, supra, and in Notes 2, 3 and 4, down through the night of March 1-2, 1973, excluding December 1, 1972. It related the details of actual play, winnings and losings, at the blackjack and dice tables by Mr. Flynn, his brother agents and by the confidential informer. The location and its appearance and consist were described in the affidavit with particularity.
 
 
 14
 The allegations of the warrant tracked those of the affidavit. The warrant was executed the evening of March 2, 1973, less than twenty-four hours after the last observation.
 
 
 15
 There was no basis in this record for suppressing the search or the evidence seized on the basis of insufficiency of the search warrant or the supporting affidavit. While a warrant secured for violation of Section 1955 must be based on probable cause to believe that federal and not merely state law is being violated, the affidavit here amply demonstrated the existence of probable cause to believe that Section 1955 as we interpret its meaning, supra, was being violated.
 
 
 16
 The jury's verdict that Presley, Nelson, Slaughter, McEarchern and Marrifield[6] were guilty of conduct condemned as criminal by the plain words of Section 1955 had ample evidentiary support. The proof demonstrated involvement by five persons in a gambling business in violation of the law of the State of Alabama, one which remained in substantially continuous operation for a period in excess of thirty days.[7]
 
 
 17
 The situation with regard to appellant Poulos requires additional elaboration because his participation was established for a period of only twenty-three days, between February 8 and March 2, 1973.[8] He seeks reversal of his conviction since the proof did not show he was an operator for a period in excess of thirty days and because, during the period of observation of his involvement, only three others were similarly engaged. He argues thus that the jurisdictional requirements were not met because, during the period of his proved participation, only four persons were involved for a period of less than thirty days.
 
 
 18
 Judge Ingraham pointed out for this Court in United States v. Bridges, 5 Cir. 1974, 493 F.2d 918, 922, that Section 1955 was aimed at large scale gambling activity, and requires size (five persons) and continuity (a period in excess of thirty days) to produce a business of sufficient magnitude to warrant federal regulation. We can agree, therefore, as the government conceded during oral argument, that once the five man/thirty day requirement has been met, all persons thereafter employed in the business are not automatically subject to conviction without regard to size, continuity, or the time span, simply because the size and continuity requirements were met originally. An illegal gambling business, like any other, is subject to vicissitudes and may shrink in size and number of persons involved. If the evidence, therefore, compelled a finding, as Poulos asserts, that the business at the time of his association had been reduced in size, i. e., that Marrifield withdrew in December, and that McEarchern became ill, ceased work, and was replaced by Poulos and that Poulos during the entire period of his participation was only the fourth man in a four-man enterprise, it and its participants at that time (including Poulos) would be outside the reach of Section 1955.
 
 
 19
 But if an individual joins an ongoing operation where there had been five persons involved for a period in excess of thirty days and replaces one of the five, the government need not prove his separate involvement for a period over thirty days before a conviction under Section 1955 may be sustained. Once the five man/thirty day jurisdictional test is met, it is not necessary that successive individuals joining the enterprise also engage in it for thirty days before they can be convicted under the act. See United States v. Smaldone, 10 Cir. 1973, 485 F.2d 1333, 1351, cert. denied 1974, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286. Our holding in Bridges, supra, is not to the contrary because the proof in that case did not show any participation by as many as five persons for a period longer than eighteen days. Therefore, if the evidence supports a finding that Poulos joined after Marrifield's departure but while McEarchern continued to aid in the conduct of the enterprise, Poulos' conviction must be sustained even though the proof failed to show his presence for a period in excess of thirty days. Cf. United States v. Mattucci, 6 Cir. 1974, 502 F.2d 883, 889.
 
 
 20
 McEarchern's status, in short, is critical to a resolution of Poulos' appeal. The record contains testimony that McEarchern had been sick and/or had been replaced by Poulos, but this included unobjected to hearsay and self-serving declarations of Presley. Balanced against this was evidence of McEarchern's participation from August through December, his presence on the night of the March 2 raid within the isolated fenced location of the gambling enterprise, patrolled as it was by a German Shepherd dog, and with an established pattern of operating with but four in the gambling trailer at any one time. The conflict in the evidence as to McEarchern's continued involvement presented a jury issue resolved, in this instance, against Poulos.[9] The jury's finding of Poulos' guilt was supported by the facts and the law.[10]
 
 
 21
 The final contention by all appellants is that contrary to the ruling below, the indictment[11] should not have withstood their motions to dismiss. They assert that the general allegation of a violation of the Alabama Criminal Code, which is an essential element of the federal charge,[12] did not sufficiently inform them of the specific charges they were called upon to defend. More specifically, they urge that an allegation detailing the violation of state law was required. The argument is lacking in merit. The grand jury's accusation that the defendants "did knowingly and wilfully conduct . . . an illegal gambling business, to-wit, a business for placing bets on dice and cards" set forth a violation of Alabama law adequate to place them on notice of the charge they confronted. The indictment adequately set out the essential elements of the federal offense and provided notice of the government's charges.[13] See Hagner v. United States, 1932, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; United States v. McGhee, 5 Cir. 1974, 488 F.2d 781, cert. denied, 417 U.S. 971, 94 S.Ct. 3176, 41 L.Ed.2d 1142; 1 C. Wright & A. Miller, Federal Practice and Procedure §§ 123-25 (1969). Further factual allegations were not required. The decision of the district court is
 
 
 22
 Affirmed.
 
 
 
 [1]
 Section 1955 became law as part of Title VIII of the Organized Crime Control Act of 1970, Pub.L. 91-452, 84 Stat. 922. Congress therein used its power under the commerce clause to proscribe any gambling business, which
 (i) is a violation of the law of a State or political subdivision in which it is conducted;
 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
 18 U.S.C.A. § 1955(b)(1) (Supp.1974).
 
 
 [2]
 Nelson was the only appellant present during each F.B.I. undercover visit, on August 12, 1972, September 29, 1972, October 4, 1972, October 27, 1972, November 10, 1972, December 1, 1972, February 8, 1973, February 25, 1973, March 1, 1973, and during the evening the trailer was raided, March 2, 1973
 Slaughter was identified as being present on August 12, 1972, October 4, 1972, October 27, 1972, November 10, 1972, February 8, 1973, February 25, 1973, March 1, 1973 and March 2, 1973.
 Presley was present on September 29, 1972, October 4, 1972, October 27, 1972, December 1, 1972, February 8, 1973, February 25, 1973, March 1, 1973 and March 2, 1973, but the jury could easily infer his presence and participation as early as August 12, 1972 from additional testimony, including statements attributable to him, identifying him as the man in charge of the operation.
 
 
 [3]
 Marrifield was present on August 12, 1972, September 29, 1972, October 4, 1972, November 10, 1972, and December 1, 1972. There is no evidence placing him at the trailer after December 1, and for purposes of this appeal, we accept his contention that he withdrew from the operation in December
 
 
 [4]
 McEarchern was observed participating on August 12, 1972, September 29, 1972, October 27, 1972, November 10, 1972 and December 1, 1972. He was in an adjacent trailer on March 2, 1973, at the time of the raid. While McEarchern contends, with some evidentiary support, that he became ill, ceased working, and was then replaced by Poulos, acceptance of this contention would not affect disposition of his appeal or that of any appellant other than Poulos. As to Poulos, see the discussion, text, infra
 
 
 [5]
 In their brief at p. 21, appellants contend that the statutory intent was "that five or more people work at the operation at the same time. It is submitted that a dozen, two dozen, or a hundred, people could work at the operation at different times, so long as the number of people working there at any one time did not exceed four". Presumably, if the fifth man involved was absent off duty while the other four conducted the game, the five person requirement would not be met
 
 
 [6]
 Marrifield, his contentions to the contrary notwithstanding, was shown to be a regular participant, albeit on an irregular schedule for a period far in excess of the minimum statutory requirement
 
 
 [7]
 After reading the applicable Alabama statute, the district judge instructed the jury that the evidence demonstrated that the gambling business was not licensed as required by Alabama law, and that the evidence was uncontradicted that it was an illegal gambling business. He also instructed that, even as to uncontradicted evidence, the government had the burden of proof beyond a reasonable doubt. We find no error in this charge. See United States v. Thaggard, 5 Cir. 1973, 477 F.2d 626, 631, cert. denied, 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469; see also United States v. Romano, 5 Cir. 1973, 482 F.2d 1183, cert. denied sub nom., United States v. Yassen, 1974, 414 U.S. 1129, 94 S.Ct. 866, 38 L.Ed.2d 753
 
 
 [8]
 The evidence showed his participation on February 8 and 25, and March 1 and 2, 1973
 
 
 [9]
 We also note that testimony of one witness did place Poulos at the dice table in mid-December 1972
 
 
 [10]
 Poulos also asserts a lack of proof as to his knowledge that there were five participants. This does not compel a different result. See United States v. Brick, 8 Cir. 1974, 502 F.2d 219, 224
 
 
 [11]
 The indictment charged, in pertinent part, that the appellants "did knowingly and wilfully conduct . . . an illegal gambling business, to-wit, a business for placing bets on dice and cards, . . . said business being in substantially continuous operation for a period of time in excess of 30 days and involving five or more persons in its conduct, management, supervision and direction, being in violation of the Code of Alabama, Title 14, Section 265; all in violation of Title 18, United States Code, Section 1955."
 The Code of Alabama, Title 14, Section 265 (Recomp.1958) provides:
 Keeping gaming table. Any person who keeps, exhibits, or is interested or concerned in keeping or exhibiting any table for gaming, of whatsoever name, kind, or description, not regularly licensed under the laws of this state, shall be guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than two hundred dollars nor more than five hundred dollars, and shall also be sentenced to hard labor for the county for not more than twelve months, and on a second or any subsequent conviction, shall be imprisoned in the penitentiary for not less than two nor more than five years.
 
 
 [12]
 Title 18, U.S.C., Section 1955(b)(1)(i)
 
 
 [13]
 We note additionally that the trial court was liberal in granting pre-trial motions for bills of particulars as to each defendant. Each of the appellants went on trial possessed of precise information as to the case against him