**UNITED STATES of America, Appellee,**

v.

**John J. MURRAY, Defendant, Appellant.**

**No. 89–1991.**

United States Court of Appeals, First Circuit.

Heard July 30, 1990.

March 27, 1991.

---

Roger A. Cox, Boston, Mass., by Appointment of the Court, for defendant, appellant.

Alexandra Leake, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and RE,* Judge.

RE, Chief Judge:

Appellant, John J. Murray, appeals from a judgment of conviction following a jury trial in the United States District Court for the District of Massachusetts. Murray was convicted of conducting and conspiring to conduct a gambling business in violation of 18 U.S.C. §§ 1955 and 371.

Murray contends that the district court erred in denying his motion for acquittal, or, alternatively, a new trial since insufficient evidence was presented at trial to prove beyond a reasonable doubt that Murray conspired to conduct and conducted a gambling business that "involve[d] five or more persons" and the business either "remain[ed] in substantially continuous opera-

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

tion for a period in excess of thirty days or [had] gross revenue[s] of $2,000 in any single day."

We hold that the evidence presented at trial was insufficient to prove that Murray conspired to conduct or conducted a gambling business involving five or more persons that either operated for a period in excess of thirty days or had gross revenues of $2,000 in any one day. Hence, the judgment of the district court is reversed.

## BACKGROUND

In July 1987, a superseding indictment was returned by a federal grand jury in Massachusetts against Murray and several others who were arrested as a result of an investigation of the Willow Bar in Somerville, Massachusetts. They were charged with conducting, conspiring to conduct, and aiding and abetting in the conducting of an illegal gambling business in violation of 18 U.S.C. §§ 1955, 371, and 2.

The indictment arose out of an internal employee investigation by the United States Customs Service. The employee, Joseph O'Hare, a customs inspector, was suspected of violating Customs Service regulations by owning a bar without Customs Service permission. As part of the investigation, the Customs Service placed an undercover Agent, Janet Durham, in the bar as a waitress. Durham worked as a waitress from August 4, 1986, to December 12, 1986. During this period, Durham was working, or present as a patron on approximately fifty-six days between August 4, 1986, and December 12, 1986.

Evidence presented at trial by Agent Durham revealed that a telephone, located at the back of the Willow Bar near a corner barstool, was used to accept bets on dog and horse races. Bets were also taken from Willow Bar patrons. Near the corner barstool was a door leading to a jazz club. While only one person at a time was observed by Durham to be taking bets, several different persons were observed to be taking bets on different days.

A review of the trial testimony, largely that of Agent Durham, shows that the following people sat on or stood near the corner barstool, answered the phone, accepted money from patrons, and then made notations on small pieces of paper: (1) the appellant, Murray, eight times between August 16, 1986 and November 11, 1986; (2) Anthony Bruno, seventeen times between August 6, 1986, and December 5, 1986; (3) Aneillo Mazza, a co-owner of the Willow Bar, four times between October 9, 1986, and November 13, 1986; (4) John Sheehan, four times between August 28, 1986, and December 11, 1986; (5) Robert Grady, twice, once on August 20, 1986, and once on August 22, 1986; (6) Sarah Bergami, once, on August 16, 1986; (7) William Boyden, four times between September 6, 1986, and October 23, 1986; (8) William Morgan, once, on November 15, 1986; and (9) Robert O'Donnell, once, on August 4, 1986.

Although they were not observed by Agent Durham to have taken bets, the following individuals were alleged by the government to have been participants in the gambling operation: John O'Hare, an alleged partner of Aneillo Mazza in the Willow Bar, and Donald Johnson, an alleged off-site participant. Bruno, whose case was severed, entered a guilty plea prior to the end of Murray's trial. The district court directed a verdict of not guilty for Johnson as to the two counts involved in Murray's appeal, Murray and Mazza were found guilty, O'Hare, Sheehan, and Grady, were found not guilty, and Bergami, Boyden, Morgan, and O'Donnell, alleged to have been participants in the gambling business, were not indicted.

## DISCUSSION

Since Murray was found guilty by the jury, we will review the sufficiency of the evidence, including all reasonable inferences, in the light most favorable to the prosecution. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Dirring,* 328 F.2d 512, 515 (1st Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 (1964).

## I. Section 1955

Section 1955(a) states that it is a violation of federal law to conduct, finance, manage, supervise, direct, or own all or part of an illegal gambling business. According to the statute, an illegal gambling business is, first, one that violates state law. *See* 18 U.S.C. § 1955(b)(1)(i). This language does not require the defendant to have been found guilty in state court. Rather, it requires that the jury in the federal court determine that state gambling laws have been violated. In most cases, as in the present case, the violation of state law is uncontested on appeal. *See* Mass.Gen.L. ch. 271, §§ 3, 5, 17, and 17A (1980). *See also United States v. Bridges*, 493 F.2d 918, 919 (5th Cir.1974).

The second requirement is that the illegal gambling business must "involve[ ] five or more persons who conduct, finance, manage, supervise, direct, or own" the business. 18 U.S.C. § 1955(b)(1)(ii).

The third requirement is that the five or more person business "remain[ ] in substantially continuous operation for a period in excess of thirty days or [have] a gross revenue of $2,000 in any single day." 18 U.S.C. § 1955(b)(1)(iii).

These three requirements are substantive elements of the crime. If, as Murray contends, the evidence is insufficient to prove one of the requirements beyond a reasonable doubt, we must reverse the judgment of the trial court. *See United States v. Zannino*, 895 F.2d 1, 9 (1st Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

Our role in interpreting a criminal statute is "to discern Congress' intent as embodied in the statute at hand." *United States v. McGoff*, 831 F.2d 1071, 1076 (D.C. Cir.1987). We begin by studying the language of the statute itself. Indeed, "we must dwell on the language and structure of the entire statute. If our examination of the entirety of the statute evinces a clear, unequivocal answer to the interpretative question," we need look no further. *Id. See Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

In the present case, the language of the statute clearly states that those involved must have been found to "conduct, finance, manage, supervise, direct, or own" the gambling business. The courts that have interpreted the statute, however, have had some difficulty in determining how broadly the words "to conduct" should be interpreted.

Since "the degree of participation intended to be proscribed as criminal by Section 1955 is nowhere therein defined, courts considering this issue have looked for guidance to the legislative history of Title 18, U.S.C., Section 1511...." *United States v. Marrifield*, 515 F.2d 877, 880 (5th Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 461, 462, 46 L.Ed.2d 394 (1975). The legislative history of Section 1511, a statute enacted contemporaneously with and containing the same language as § 1955, states that "[these] section[s] appl[y] generally to persons who participate in the ownership, management, or conduct of an illegal gambling business." 'Conducts,' according to the legislative history, "refers both to high level bosses and street level employees ... [but] [i]t does not include the player in an illegal game of chance, nor the person who participates in an illegal gambling activity by placing a bet." H.R.Rep. No. 91–1549, 91st Cong.2d Sess. (1970) *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4029. *See Marrifield*, 515 F.2d at 880; *United States v. Ceraso*, 467 F.2d 653, 656 (3rd Cir.1972).

"Conduct" has been recognized by the Supreme Court to be "any degree of participation in an illegal gambling business except participation as a mere bettor." *Sanabria v. United States*, 437 U.S. 54, 70–71 n. 26, 98 S.Ct. 2170, 2182, n. 26, 57 L.Ed.2d 43 (1978). The term participation, however, has been limited by some courts, including this court, to the performance of acts that are "necessary or helpful" to the gambling business. *See Zannino*, 895 F.2d at 10; *United States v. DiMuro*, 540 F.2d 503, 508 (1st Cir.1976) ("necessary and useful"), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977).

■ We are mindful of the constraints placed on the interpretation and application of criminal statutes, and we recognize that "[i]n the criminal context, courts have traditionally required greater clarity in draftsmanship than in civil contexts...." *McGoff*, 831 F.2d at 1077. Furthermore, to avoid the imposition of penalties not intended by Congress, the courts have applied the doctrine of lenity when there is serious doubt as to the reach of a criminal statute. *See United States v. Winchester*, 916 F.2d 601, 607 (11th Cir.1990). The doctrine of lenity "'rests on the fear that expansive judicial interpretations will create penalties not originally intended by the legislature.'" *Id.* (quoting 3 N. Singer, *Sutherland Statutory Construction* § 59.03 (4th ed. 1986)).

## II. The Evidence Against Murray

On judicial review, our function is to review the evidence to determine whether five persons were participants in the gambling business, and whether they knowingly participated by performing an act that was necessary or helpful to the business for a period in excess of thirty days, or the gambling business had gross revenues of $2,000 in any one day.

### A. The Participation of Five Persons for Thirty Days

The government contends that the Willow Bar gambling operation involved more than five persons for a period of time in excess of any thirty-day period. In support of this contention, the government asserts that the evidence presented at trial shows that eleven people participated, and that the gambling business was in existence for many years. We disagree. We find that the evidence presented shows that, at most, four persons operated a gambling business out of the corner barstool of the Willow Bar for a period in excess of thirty days, and that the identity of those involved frequently changed. Indeed, the government's witness, Agent Durham, testified that Bruno stated that, when he was not working, Murray or another individual would substitute for him.

■ The period of time during which Agent Durham worked as a waitress at the Willow Bar, August 4, 1986, to December 12, 1986, will serve as the period of time in which the government must prove that, during some thirty day period, there existed a gambling business involving five persons. The government need not prove that the same five persons participated for thirty days. *See United States v. Tucker*, 638 F.2d 1292, 1297–98 (5th Cir. Unit A March), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). Furthermore, the government need not prove that the five participants were active every day. The statute merely requires a "substantially continuous," not a daily, operation. *See United States v. Allen*, 588 F.2d 1100, 1102–04 (5th Cir.) (eleven days of surveillance over a five month period sufficient for inference of substantially continuous operation), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. Nerone*, 563 F.2d 836, 843–44 (7th Cir.1977) (weekend casino operation sufficient to show substantial continuity of operation), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1577, 55 L.Ed.2d 801 (1978). The government must, however, through either direct or circumstantial evidence, prove that "at all times during some thirty day period at least five persons [did] 'conduct, finance, manage, supervise, direct, or own' the [illegal gambling] business." *United States v. Gresko*, 632 F.2d 1128, 1132 (4th Cir. 1980). *See Bridges*, 493 F.2d at 922. *See also United States v. Marrifield*, 515 F.2d 877, 881 (5th Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 461, 462, 46 L.Ed.2d 394 (1975).

The *United States v. Marrifield* case involved a gambling business that was being operated out of a trailer. Although the operation required only four participants on a given day, five persons rotated the duties of the gambling business. *See id.* at 879. Contending that the gambling business did not satisfy the requirements of § 1955, since only four persons actually conducted the gambling business at any one time, the appellants appealed their convictions, entered after a jury verdict of guilty.

The Court of Appeals for the Fifth Circuit affirmed the convictions, stating that

> [a]ll the evidence need demonstrate is that five or more participated in whole or in part during the more that thirty day period when the gambling business was in substantially continuous operation.... The fact that only four of them were engaged at any particular time in running a business which contemplated and took advantage of the active participation of five is without decisional significance here.

515 F.2d at 881.

The quoted language indicates that the requirements of § 1955 are satisfied if the gambling business involves the participation of five persons for more than thirty days, whether or not each of the five persons participates every day.

Although the government need not prove that each of the eleven persons alleged to be involved were participants, it must prove the participation of five persons for a minimum of thirty days. The five persons found to be participants need not be found guilty of violating § 1955, and, indeed, they need not be indicted or named. *See United States v. Balistrieri*, 779 F.2d 1191, 1212 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986); *United States v. Boyd*, 566 F.2d 929, 936–37 (5th Cir.1978). *See also United States v. Calaway*, 524 F.2d 609, 616–17 (9th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976).

Bookmaking, the practice of taking bets on events that are commonly the focus of gambling, if accomplished on a more than occasional basis, is a gambling business. Those persons who are "bookmakers" in a gambling business, in that they work for the gambling business by taking bets, are clearly performing acts that are necessary or helpful to the gambling business. In the present case, the testimony at trial from Agent Durham and a bettor shows that the appellant Murray, his co-defendant Mazza, and Bruno were bookmakers. Murray, Mazza, and Bruno were often seen sitting at the corner barstool, answering the phone, taking money from patrons, and writing notes on small pieces of paper. There was also testimony from bettors that Murray, Mazza, and Bruno had been taking bets for an extended period of time prior to the government's investigation. We find that a reasonable inference can be drawn that Murray, Mazza, and Bruno were conducting a gambling business by taking bets for a period in excess of thirty days.

The evidence of John O'Hare's participation is not as compelling as the evidence pertaining to Murray, Mazza, and Bruno. Although, he was found not guilty, when viewed in the light most favorable to the prosecution, the evidence may be deemed to be sufficient to withstand a challenge to his inclusion as a participant.

There was evidence presented at trial, which, if believed by the jury, could show that O'Hare may have been a co-owner of the Willow Bar, that he was often present, that he may have paid some telephone bills, and that he once called out some winning numbers and passed money to a patron. This evidence, viewed in the light most favorable to the prosecution, is sufficient to support a conclusion that O'Hare was a participant in the gambling business. We are mindful that "[o]nly when there is an absence of probative facts to support the conclusion reached by the jury ... does a reversible error appear." *United States v. Manuel–Baca*, 421 F.2d 781, 782–83 (9th Cir.), *cert. denied*, 399 U.S. 933, 90 S.Ct. 2269, 26 L.Ed.2d 804 (1970).

The government's case, however, fails at this point since four participants in a gambling business are insufficient to bring that gambling business to the level required for federal prosecution under § 1955. To sustain a conviction under § 1955, the evidence must show that the government proved beyond a reasonable doubt that at least one additional person participated in the gambling business. If all of the requirements under § 1955 are not met, the verdict must be set aside.

The government, citing our decision in *Zannino*, asserts that all the named individuals in the present case can be included as participants, "regardless how minor their roles...." In *Zannino*, a case in-

volving a gambling business operating out of an apartment, we held that the appellant's challenge of the sufficiency of the evidence as to the participation of five persons was without merit. 895 F.2d at 10. The evidence presented in *Zannino*, however, showed that the fifth person, Roberto, was present at the apartment "five times during the surveillance period," that he was referred to as the partner of the manager of the operation, and that, according to the testimony of an expert witness, he was a participant from December 1980, to March 1981. *Id.* at 5, 10. Based on the evidence, we concluded that "Roberto performed a necessary, or at least facilitative, role in the ordinary operation of the ... gambling business." *Id.* at 10–11. Hence, in *Zannino*, there was sufficient evidence in the record to show Roberto's participation in the gambling business. The evidence in *Zannino*, however, is not comparable to that presented here to show the participation of the other named individuals.

◼ The government submits that William Boyden, who was observed to be answering the phone and taking notes on small pieces of paper on four occasions, was a participant from September 6, 1986, to October 23, 1986. We note that other Courts of Appeals have found that participation on a small number of occasions is sufficient to show continuous participation in a gambling business when there are only a few days of surveillance. In the present case, which involved approximately 56 days of surveillance, the government was not able to produce sufficient evidence to show Boyden's involvement on more than four occasions, the first occasion separated from the second by twenty-eight days. *See Allen*, 588 F.2d at 1104; *Nerone*, 563 F.2d at 843.

In *United States v. Gresko*, a case involving a small gambling operation, the Court of Appeals for the Fourth Circuit stated that a jury could infer continuous participation between two dates when the surveillance took place on a small number of days. 632 F.2d at 1133. In the present case, however, the reasonable inference to be drawn by the jury is that Boyden was not a participant on a continuous basis between the dates that he was actually observed by Agent Durham to have taken bets. (September 7, October 4, 12 and 22). It is reasonable to infer that Boyden was involved once in September, left the operation, and then returned for a brief period in October. Hence, although Boyden was observed by Agent Durham, on four occasions, to have answered the phone and made notations on small pieces of paper, his involvement does not constitute active participation in the gambling operation so as to support his inclusion as one who "conduct[ed], finance[d], manage[d], supervise[d], direct[ed] or own[ed]" the operation for a period of time in excess of thirty days.

Sarah Bergami, a waitress/bartender, and John Sheehan, a bartender, are also alleged by the government to have been participants in the gambling business. Testimony at trial shows that, on one occasion, Bergami answered the phone and made notations on a piece of paper. Bergami testified at trial that she knew of the gambling operation and observed it on a nightly basis. Knowledge of the illegal activity, however, is insufficient to support the government's assertion that she participated in the business. *See United States v. Morris*, 612 F.2d 483, 494 (10th Cir.1979). Evidence that Bergami once answered the phone and made notations on paper fails to support the government's contention that she was necessary or helpful to the gambling business and was continuously participating for a period in excess of thirty days. At most, it can be said that, on one occasion, she substituted for Murray, Mazza, or Bruno.

As to John Sheehan, the evidence also fails to support his inclusion as one of the required five persons. Evidence presented at trial indicates that he was observed answering the phone and taking down notes four times between August 28, 1986, and December 11, 1986. As previously noted, this may be sufficient evidence to support an inference of continuous participation when the surveillance consisted of only a few days or a brief period. In the present

case, however, Agent Durham was inside the Willow Bar on approximately fifty-six days and she observed Sheehan answering the phone and taking notes on only four occasions. Therefore, even if Sheehan was involved, he was not continuously conducting a gambling business for a period of time in excess of thirty days. Sheehan was merely a bartender who, on four occasions, substituted for Murray, Mazza, or Bruno by answering the telephone and writing on small pieces of paper.

While we recognize that an individual need not be employed in a supervisory capacity in order to be a participant, and that "street level" employees are to be included, under the present circumstances, neither Sheehan nor Bergami can be said to have participated in a manner that was necessary or helpful to the gambling business for a period in excess of thirty days.

■ The government, citing *United States v. Tucker*, asserts that Bergami and Sheehan's employee status is sufficient evidence of their participation in the gambling operation for a period in excess of thirty days.

In *Tucker*, a case involving a two-story lounge with exotic dancing in the upstairs part of the lounge and a blackjack game in the downstairs part, the Court of Appeals for the Fifth Circuit held that the waitresses were participants in the gambling business since they "serve[d] drinks to gamblers, [made] change for them to use in placing bets in a cash game, and deliver[ed] phone messages to them...." 638 F.2d at 1296. Furthermore, the court stated, "the question of what activities are necessary to or helpful in the operation of a gambling business is answered by the decision of the management of the business to hire someone to perform activities that it deems will contribute to the success of the enterprise." *Id.* (footnote omitted).

In contrast to the present case, the lounge in *Tucker* had a separate room for gambling. Furthermore, the waitresses' duties were an integral part of the gambling business. They were employed by the gambling business, and, at all times, at least one waitress made change for the gamblers' wagers, and served drinks specifically to those individuals who were gambling. *See id.* In the present case, however, Bergami and Sheehan were employed by the Willow Bar to serve drinks to customers. They were not employed by a gambling business to serve drinks to gamblers. Additionally, there was no evidence presented at trial that indicates that Bergami's and Sheehan's activities as bartenders, or, in the case of Bergami, as a waitress, were necessary or useful specifically to the gambling operation. Finally, even if Bergami and Sheehan were involved, the evidence was insufficient to show that they conducted a gambling business continuously for a period of time in excess of thirty days.

We do not state that a bartender or waitress may not be a participant in a gambling business. Rather, we conclude that, in this case, insufficient evidence was presented to show that Sheehan and Bergami were participants in the Willow Bar barstool gambling operation for a period in excess of thirty days.

■ The government also asserts that O'Donnell, Grady, and Morgan were participants in the Willow Bar gambling operation. We disagree. O'Donnell and Morgan were each observed by Agent Durham to have taken bets on one occasion, and Grady was observed to have taken bets on two occasions that were one day apart. While O'Donnell, Morgan, and Grady might be said to have been involved, since they did take bets on one or two occasions, they did not "conduct, finance, manage, supervise, direct or own" the gambling business for a period of time in excess of thirty days. *See United States v. Todaro*, 550 F.2d 1300, 1302 and n. 5 (2d Cir.), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977).

■ The government submits that Johnson, an alleged offsite participant, and some other unidentified persons at offsite locations, were participants for more than thirty days because some bookmakers made numerous calls "to the off-site locations managed by Donald Johnson." This

contention is based on evidence presented at trial that the government asserts supports an inference that either Murray or Mazza often came into the bar, talked with the bookmaker, then left for another location which might have been one of three possible offsite offices allegedly a part of the Willow Bar gambling operation.

As has been noted previously, the district court directed a verdict of not-guilty as to Johnson on the § 1955 charges, finding that the evidence was insufficient to show a connection between Johnson and the Willow Bar gambling operation. We agree with that finding of the district court. While the evidence presented at trial suggests that Johnson was involved in a gambling business, and that Johnson's office or other offices may have received telephone calls from the Willow Bar, it does not support Johnson's inclusion as a participant.

It has been stated that when the government attempts to prove a connection between two apparently unconnected gambling businesses, "dealing with each other [must have been] an essential ingredient to the success of both operations." *United States v. Clements*, 588 F.2d 1030, 1038 (5th Cir.), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 (1979). No evidence was presented that these two apparently separate operations depended on each other. The evidence merely shows that some phone calls were made between the Willow Bar and some offices allegedly managed by Johnson or unknown individuals.

Since the government has presented no evidence to show that the two businesses exchanged "betting line" information,[1] *see DiMuro*, 540 F.2d at 508, made or accepted "layoff" bets [2] with each other, *see United States v. Sacco*, 491 F.2d 995, 1002–03 (9th Cir.1974), or performed other tasks necessary for the successful operation of both

businesses, the evidence is insufficient to prove beyond a reasonable doubt that the businesses were interrelated. *See id.* *See also United States v. Bourg*, 598 F.2d 445, 448–49 (5th Cir.1979).

We do not agree with the government's assertion that the evidence shows the more than thirty day participation of at least five persons. What was stated in *Gresko* is equally applicable here that "a four person operation with changing personnel [is] outside the reach of the statute." 632 F.2d at 1133. In the present case, the evidence is insufficient to show any "period of thirty days during which any five people were continuously involved in operating" a gambling business at the Willow Bar. *Id.* at 1134.

### B. The Participation of Five Persons and Gross Revenues of $2,000 in Any One Day

Section 1955 provides an alternative to the thirty day requirement. The section is also violated if a gambling business involves five or more participants and has gross revenues of $2,000 in any one day. *See* 18 U.S.C. 1955(b)(1)(iii).

Gross revenue refers to the total amount wagered in any one day. *See United States v. Reitano*, 862 F.2d 982, 986 (2d Cir.1988); *Ceraso*, 467 F.2d at 657. Murray asserts that the government has "offered no proof of ... revenues" of $2,000 in any one day. While we recognize that it may be difficult to prove that a gambling business has gross revenues of $2,000 in any one day, the evidence presented is, nonetheless, insufficient proof of $2,000 gross revenues in a single day.

■ The government contends that the gambling business was "lucrative" since "Customs agents seized $3,093.00 in cash from defendant Bruno ..." and this

---

**1.** "Betting line" information refers to the odds the bookmaker will give to the bettors based on the relative strengths of the competitors. *See United States v. Joseph*, 519 F.2d 1068, 1070 n. 2 (5th Cir.1975).

**2.** If a greater number of bets are placed on one dog or horse in a particular race, the bookmaker will himself place a bet with another book-

maker on the most popular dog or horse in an amount equal to the amount those bets exceed the amounts bet on the disfavored dogs or horses. If the popular dog or horse wins, the bookmaker will offset his losses to his bettors with his own winnings. *See United States v. Boyd*, 566 F.2d 929, 934 n. 11 (5th Cir.1978).

amount "represented but the initial installment on the day's gross proceeds." The government also asserts that, Agent Durham once saw Bruno at the bar with several $100 bills, and that another customs agent once saw Bruno pick up a large stack of money. This evidence can hardly be said to constitute proof of $2,000 in gross revenues in a single day since there was no testimony that anyone "observed the action and ... estimated" the amount involved, or that anyone involved in the gambling business stated that the business received $2,000 in gross revenues. *United States v. Zemek*, 634 F.2d 1159, 1178 (9th Cir.), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1980). *See Reitano*, 862 F.2d at 987; *Clements*, 588 F.2d at 1038. The money in Bruno's possession when he was arrested could have been accumulated in more than one day's gambling operation, or, indeed, might have been derived from sources outside the gambling operation. Therefore, the government's evidence to show that the Willow Bar barstool gambling operation had gross revenues of $2,000 in any one day is insufficient, and Murray's conviction cannot be sustained on this alternative basis.

## III. Conspiracy to Conduct a Gambling Business in Violation of Section 1955

Murray asserts that "[w]here the Government failed to prove beyond a reasonable doubt the existence of a § 1955 five person/thirty day gambling business ... the conspiracy conviction" under 18 U.S.C. § 371 must be set aside. While we note that the government makes no assertions on the conspiracy conviction, we will nonetheless view the evidence as to the conspiracy in the light most favorable to the government. *See Dirring*, 328 F.2d at 515.

It has been held by the Supreme Court that, in a § 1955 case, the conspiracy charge does not "merg[e] ... into prosecutions under § 1955." *Iannelli v. United States*, 420 U.S. 770, 789, 95 S.Ct. 1284, 1296, 43 L.Ed.2d 616 (1975). Furthermore, a conspiracy conviction requires the same intent as that required for a conviction of the substantive offense. *See United*

*States v. Feola*, 420 U.S. 671, 684–85, 95 S.Ct. 1255, 1263–64, 43 L.Ed.2d 541 (1975). Additionally, the defendants in a § 1955 case need not know that their behavior violates federal law. *See id.* at 687, 95 S.Ct. at 1265. *See also United States v. Leon*, 534 F.2d 667, 674–75 (6th Cir.1976).

In *Leon*, it was held that proof of the defendant's knowledge of federal law or intent to violate federal law was not required since the defendant's actions in that case did in fact violate federal law. Relying on the Supreme Court's decision in *Feola*, the court stated that intent to violate federal law was irrelevant since the defendant's intent, as evidenced by his actions, amounted to a violation of federal law. *See Leon*, 534 F.2d at 674–675.

■ The issue here is different, and more closely resembles the question presented in *United States v. Greco*, 619 F.2d 635 (7th Cir.1980). In *Greco*, the court reversed the conviction for conspiracy to violate § 1955 since "there [was] neither sufficient evidence to support a finding of the participation of the requisite number of persons nor a showing of knowledge or intent on the part of the defendant that such number be engaged in the gambling business." *Id.* at 640. The court in *Greco* reasoned that when the evidence is insufficient, and there is no evidence that the defendant knew or intended that five persons participate for more than thirty days, there is no evidence of an agreement to engage in conduct that amounts to a violation of federal law. *See id.*

On the record before us the actions of Murray do not violate § 1955, and that there is no evidence of knowledge or intent to establish that Murray anticipated acting in a manner that amounts to a violation of § 1955. Accordingly, he cannot be convicted for conspiracy under § 371.

## CONCLUSION

We conclude by noting that Congress intended § 1955 to embrace only "illegal gambling activities of major proportions," and "to reach only those persons who prey systematically upon our citizens and whose

syndicated operations are so continuous and so substantial as to be of national concern...." H.R.Rep. No. 91–1549, 91st Cong.2d Sess. (1970) *reprinted in* 1970 U.S.Code, Cong. & Admin.News 4007, 4029.

Since we hold that five persons did not conduct or conspire to conduct a gambling business for a period in excess of thirty days, nor did five persons conduct or conspire to conduct a gambling business that had gross revenues of $2,000 in any one day, Murray's conviction for the offenses of conducting a gambling business in violation of § 1955 and conspiring to conduct a gambling business in violation of § 371 is set aside, and the judgment of the district court as to Murray is reversed.

CAMPBELL, Circuit Judge, dissenting.

Because I believe that the evidence in this case, viewed in the light most favorable to the prosecution, requires us to affirm appellant's conviction under 18 U.S.C. § 1955, I respectfully dissent.

When reviewing the sufficiency of the evidence following a jury's verdict of guilty, we must indulge all reasonable inferences in favor of the prosecution. Although the majority recites this standard, *supra* at 1244, it later seems to assume the role of factfinder, delineating inferences the jury *should* have drawn rather than simply determining whether a reasonable jury could have found as it did. *See supra* at 1248. As the majority notes, the Willow Bar operation involved (a) four clear and solid participants; and (b) a total of six others who helped on a part-time basis on seventeen occasions.[1] Construing the evidence most favorably to the prosecution, I believe that the jury was entitled to treat this aggregate of six people as the equivalent of just one more active participant.

Surveying the cases, there is strong language supporting affirmance in *United States v. Marrifield*, 515 F.2d 877 (5th Cir.1975). There, the evidence showed four active participants plus one substitute.

Finding that this arrangement *met* the statutory requirement, the court explained:

> All the evidence need demonstrate is that five or more participated in whole or in part during the more than thirty day period when the gambling business was in substantially continuous operation.... The fact that only four of them were engaged at any particular time in running a business which contemplated and took advantage of five is without decisional significance here.

*Id.* at 881; *see also United States v. Tucker*, 638 F.2d 1292, 1297 (1981) (holding that § 1955 "is satisfied by evidence that a gambling business was operated by five or more persons for more than 30 days where there is no evidence that the *same* five persons operated the business for more than 30 days") (emphasis in original).

In *United States v. Gresko*, 632 F.2d 1128 (4th Cir.1980), the court cites *Marrifield* in support of the proposition that "[a] four person operation with changing personnel would be outside the reach of the statute." *Id.* at 1133. In *Marrifield*, the court indicated that a conviction could not stand if the evidence showed that one of the participants had left the operation permanently, leaving only four "conductors." *Marrifield*, 515 F.2d at 882. Thus, the *Gresko* language, interpreted in light of *Marrifield*, should not be understood to mean that "substitutes" or "alternates" may not be included in the jurisdictional five. Rather, *Gresko* and *Marrifield* suggest only that the government may not rely on proof that at one time the operation involved five people in order to convict an individual who joined the operation after the size had been reduced to fewer than five people.

Moreover, unlike the majority, the *Gresko* court was willing to assume that all of the individuals who had been observed taking bets could be counted in the operation and that the jury could have concluded that the individuals were involved during the periods between the days they were actual-

---

1. I base the calculations on the summary of the evidence contained in the government's brief, Addendum A, page 30.

ly observed. *Gresko*, 632 F.2d at 1133. Nevertheless, even under these assumptions, the evidence in *Gresko* was not sufficient to establish that more than three people were involved during any thirty-day period. *Id.* at 1134.

Following the analysis of these cases, I believe that the evidence here was sufficient to permit a jury reasonably to conclude that the Willow Bar operation was a five-person operation in business for at least thirty days. I reason as follows:

1. O'Hare and Mazza owned the bar and could be considered to have financed or conducted that operation throughout the period. They were frequently there and participated on occasion.

2. Murray and Bruno were the two principal bookmakers. Murray was observed taking bets on eleven occasions throughout the observation period. Bruno was observed twenty-five times.

3. Besides Murray and Bruno, there is evidence of bet-taking by six others (Bergami, Sheehan, Boyden, Morgan, O'Donnell, and Grady) between August and mid-December on a total of seventeen occasions. If one adds up *all* the observed bet-taking during that period by everyone (including the basic four, see 1 & 2 above), there seem to have been between 11 and 15 bets each month, with Murray and Bruno taking about sixty percent and the others taking the remainder.

From this evidence, the jury could reasonably conclude that, in order to meet the demand for betting each month, part-time or alternate bookmakers had to take up the slack, Boyden being the most active of these. (The government records Boyden as taking bets five times, namely on 9/6/86, 10/4/86, 10/18/86, 10/20/86, and 10/23/86.) Given these factors, I am convinced that a reasonable jury could conclude that, in addition to the four regulars, the Willow Bar operation required the regular availability of an additional person (or persons) to meet the needs of the bettors and continue the business. In other words, this was a five-person operation that was staffed by four regulars and a group of others.

The majority opinion states that the government need not show that the same five persons were involved for thirty days nor that the five participants were involved every day. *Supra* at 1246. I agree. However, the majority does not seem to apply this standard. Rather, it examines the evidence as to each of the potential "fifth" participants separately, rejecting each as too insignificant. The issue, however, is not whether any *one* of the part-time bet-takers was involved for thirty days but whether, as a group, they may be deemed to constitute a fifth participant in a gambling business in operation for at least thirty days. I think that this interpretation of the statute permits the result reached by the jury.

I accept that this case falls close to the jurisdictional limit defined by § 1955. Nevertheless, viewing the evidence in the light most favorable to the prosecution, I simply cannot conclude that the jury erred in finding that participation of the group of substitutes was sufficient to bring this gambling operation within the scope of the statute.