**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John JOSEPH, Bryan Roberts, Milton Kothman, Victor Ganem, Richard Dick, Defendants-Appellants.**

**No. 74–1156.**

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1975.

---

Edward J. Ganem, Victoria, Tex., for Ganem.

J. Edwin Smith, Houston, Tex., for Roberts.

Donald S. Thomas, Donald S. Thomas, Jr., Austin, Tex., for Joseph.

Jack Paul Leon, San Antonio, Tex., for Kothman.

Wayne L. Hartman, Arthur L. Lapman, Victoria, Tex., for Dick.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Virgil M. Wheeler, Jr., New Orleans, La., for amicus curiae.

Before RIVES, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

On February 2, 1973, a jury found the five defendants guilty of conspiracy to operate an illegal gambling business and of the substantive offense of operating an illegal gambling business. (See 18 U.S.C. § 371 and § 1955.) The district court entered judgments of conviction on the jury's verdict. We dis-

cuss only two issues[1] on appeal: (1) whether an irregularity in the order authorizing recording of their telephone conversations rendered the recordings inadmissible in evidence, and (2) whether there was sufficient evidence to support the jury's verdicts. We affirm the judgments of conviction.

### FACTS

Richard Dick and three other men, who were not tried with him, operated in Victoria, Texas, a gambling establishment (hereafter referred to as Victoria or Victoria bookmakers). They worked in a central place of business, accepting wagers—usually communicated by telephone—on high school, college and professional sporting events. Ganem operated a pool hall in Victoria and acted as an agent for the Victoria bookmakers, relaying wagers placed by patrons of his pool hall and handling the necessary financial arrangements—collecting from losers and paying winners. Line[2] and other gambling information was exchanged by Victoria and three of the appellants who were professional gamblers living in other Texas cities (Joseph in Austin, Roberts in Ft. Worth, and Kothman in San Antonio). Generally, they were not the Victoria bookmakers'

only source of "line." They and Victoria also placed bets with each other. Although the transcript of the wiretaps reveal that several of the appellants talked of some of those wagers as "balancing the books,"[3] a reconstruction and tabulation of the telephone transactions makes it seem unlikely that the Victoria books were balanced. The record does reveal, however, that the Victoria bookmakers did use their bets with Joseph, Roberts and Kothman to increase or decrease their wagers on contests on which their customers' wagers were not sufficient for the yield which they desired.

### AUTHORIZATION PROCEDURE

The first issue is whether the wiretap order was insufficient on its face because it named, as the Justice Department official authorizing the wiretap application, an Acting Assistant Attorney General whose authority had lapsed pursuant to the provisions of the Vacancies Act, 5 U.S.C. § 3348. The appellants, in their briefs (Joseph's brief, pp. 29–31) and in oral argument, do not contest the government's statement that the Attorney General, rather than the named official in fact authorized the application. Under facts identical with the ones in the instant case, this Court in *United*

---

1. We have delayed decision of this appeal to await an en banc decision relating to a third issue. Appellant Ganem asserted that the recordings of his telephone conversations could not be admitted into evidence against him or the other appellants, because the application for the wiretap order failed to name him as a target of the interception. Since Ganem has not shown that his rights have been prejudiced by the failure to name him, his argument is foreclosed by the recent Fifth Circuit en banc decision in *United States v. Doolittle*, 5 Cir. 1975, 518 F.2d 500. Other issues raised have been considered but, in our opinion, do not merit discussion.

2. A bookmaker's "line" is his price list—that is, the odds (or "points") he will give to individual bettors. The violations in the instant case took place during football season. A hypothetical example of the line on a Baylor-SMU football game would be Baylor + 2½ points; that is, the gambler would be predicting that SMU would win the contest by 2½

points. A bettor who bet on Baylor would win if Baylor either won the game or lost by less than three points, and would lose if SMU won by three or more points.

3. "Balancing the books" is a term of gambling art which refers to the self-protective actions of a bookmaker who receives more bets on one side of a contest than on the other. He balances his books by placing a "layoff bet" with another gambler. This "layoff bet" would be for the excess of the dollars bet on the more popular side over the dollars bet on the less popular side. For example, a bookmaker accepting wagers on the Oklahoma-Texas football game might find himself with $40,000 wagered on Texas and $100,000 on Oklahoma. To balance his books, he would place with another bookmaker a bet of $60,000 on Oklahoma. His profit would come from the 10% surcharge ("juice") that bookmakers exact on losing bets; that is, a person who placed a $10 bet would receive $10 if he won, but would pay $11 if he lost.

*States v. Robertson*, 5 Cir. 1974, 504 F.2d 289, *reh. en banc denied*, 506 F.2d 1056, held that this particular defect did not make an order facially insufficient. However, the fact that the Acting Assistant Attorney General's authority had expired was presented to the *Robertson* court only in the petition for a rehearing en banc. The rationale of the *Robertson* decision was that "the congressional intent [to limit the use of wiretap] is satisfied when the head of the Justice Department personally reviews the proposed application and determines that the situation is appropriate for employing [the] extraordinary investigative measure [of wiretapping]." *Robertson, supra* at 292. That rationale applies to the instant situation.[4] We hold that *Robertson* controls and that the recordings were admissible in evidence.

## SUFFICIENCY OF THE EVIDENCE

The second issue is whether there was evidence sufficient to support the jury's conclusion that at least five (5) persons conducted the Victoria bookmaking business and that each of the appellants helped conduct that business. A violation of 18 U.S.C. § 1955 occurs only where five or more persons conduct an illegal gambling business.[5]

Appellants concede that there were four persons conducting the gambling business—Dick and his three associates who were not tried with him. We conclude that Dick and each of the other appellants helped conduct this business.

Ganem was an associate of the bookmakers, passing on to them bets and acting as one of their disbursement agents. Agents, such as he, must be counted in deciding whether at least five persons are conducting a gambling business. *See United States v. Becker*, 2 Cir. 1972, 461 F.2d 230; *United States v. Riehl*, 3 Cir. 1972, 460 F.2d 454. Joseph, Roberts and Kothman helped the Victoria bookmakers by providing them with line and other gambling information. They served, too, as a means by which the Victoria bookmakers could increase, decrease or eliminate their risk on a particular event. A person who performs a necessary function other than as a mere customer or bettor in the operation of illegal gambling "conducts an illegal gambling business." *United States v. Jones*, 9 Cir. 1974, 491 F.2d 1382, 1384.

"The only exclusions intended by Congress were the individual player or bettor and not the professional bookmaker who also in the course of his business bets.

" 'Thus Congress' intent was to include all those who participate in the operation of a gambling business, regardless [of] how minor their roles and whether or not they [are] labelled agents, runners, independent contractors or the like, and to exclude only customers of the business.' *United States v. Becker*, 461 F.2d 230, 232 (2d Cir. 1972). 'As the House Committee Report stated, the term "conducts" is broad enough to include both "high level bosses and street level employ-

---

4. An argument can be made that the de facto officer doctrine would apply to this particular situation and that the Acting Assistant Attorney General's authority would be held not to have expired, despite the contrary provision of the Vacancies Act. *See* Annotation 71 A.L.R. 848 (1927); Comment, *Temporary Appointment Power*, 41 U.Chi.L.Rev. 146 (1973). *But see* Comment, *The De Facto Officer Doctrine*, 63 Colum.L.Rev. 909 (1963).

5. "(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

"(b) As used in this section—

"(1) 'illegal gambling business' means a gambling business which—

"(i) is a violation of the law of a State or political subdivision in which it is conducted;

"(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

"(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

18 U.S.C. § 1955(a) and (b).

ees."' *United States v. Hunter*, 478 F.2d 1019, 1022 (7th Cir. 1973) (includes runners, telephone clerks, salesmen and a watchman as 'conducting' a gambling operation).

"Certainly the lay off-bettor is a more obvious target of § 1955 than runners, salesmen, clerks, and watchmen."

*United States v. McHale*, 7 Cir. 1974, 495 F.2d 15, 18. While Joseph, Roberts and Kothman may not have been lay-off bettors, they were more than individual players or bettors and consciously aided in the conduct of the Victoria bookmaking business. There is sufficient evidence to support the jury's verdict. The judgments of conviction are affirmed.

Affirmed.