UNITED STATES of America,
Plaintiff-Appellee,

v.

Vernon Horace TUCKER and Marion
Benten Morton,
Defendants-Appellants.

No. 80–1012.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 9, 1981.

Rehearing and Rehearing En Banc
Denied April 16, 1981.

R. L. Whitehead, Jr., Longview, Tex., William B. Baggett, Lake Charles, La., for defendants-appellants.

John H. Hannah, Jr., U. S. Atty., T. J. Baynham, Jr., Heriberto Madrano, Asst. U. S. Attys., Tyler, Tex., for plaintiff-appellee.

Before WISDOM, AINSWORTH and GEE, Circuit Judges.

GEE, Circuit Judge:

The Hideaway Lounge was owned by Vernon Horace Tucker and managed by Marion Benten Morton during 1978 when the club was the subject of an FBI investigation of illegal gambling in Gregg County, Texas. The investigation resulted in the trial of Tucker, Morton, John James, Horace Hill, and Becky Teague for conducting an illegal gambling business in violation of 18 U.S.C. § 1955[1] and for conspiracy to commit that offense in violation of 18 U.S.C. § 371. Tucker, Morton, James, and Hill were convicted on both counts; Teague was acquitted. Tucker and Morton appeal

---

1. (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

their convictions on the grounds that: (1) the five-person requirement of section 1955(b)(1)(ii) was not met; (2) the government's response to the appellants' motion for a bill of particulars should have been admitted into evidence; and (3) gambling paraphernalia admitted into evidence should have been excluded because the search warrant pursuant to which it was seized was issued without probable cause. Morton also challenges the sufficiency of the evidence linking him to the illegal gambling business. We affirm.

### The Five-Person Requirement of Section 1955(b)(1)(ii)

Conducting a gambling business is not illegal under section 1955 unless the following three elements are shown. First, the enterprise must violate state law. Second, the illegal gambling business must involve "five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." Third, the business must have been "in substantially continuous operation for a period in excess of thirty days or [have had] a gross revenue of $2,000 in any single day."[2] Appellants concede that the first and third elements are satisfied in this case; however, they argue strenuously that this gambling business was not operated by the requisite five persons.

Viewing the evidence in the light most favorable to the jury's verdict, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the government established that a blackjack game was conducted in the downstairs part of the Hideaway from March 1978 until December 1978; the upstairs part of the club offered a bar and exotic dancing. The Hideaway was owned by Tucker and managed by Morton.[3] Hill and James were dealers in the blackjack game; several waitresses served drinks to the gamblers, delivered telephone messages to them, and made change for them.[4] An FBI agent testified that on one occasion a man named Pete was the dealer.[5]

Appellants concede that Tucker, James, and Hill conducted the blackjack game; as discussed later in this opinion, we find that Morton's actions with respect to the gambling business were sufficient to place him among the jurisdictional five. Thus the question is whether one of the waitresses was sufficiently involved in the gambling business to be the necessary fifth person. Appellants' argument on this point is twofold. First, they urge that the waitresses at the Hideaway did not "conduct, finance, manage, supervise, direct, or own all or part" of the gambling business within the meaning of section 1955.[6] Second, they ar-

2. 18 U.S.C. § 1955(b).

3. Morton's contention that he managed only the upstairs bar and had nothing to do with the gambling business conducted downstairs is discussed *infra*.

4. Bets were placed with cash rather than poker chips; if a gambler with a $20 bill wanted to make $2 bets, a waitress would go upstairs to get him change for the $20 bill.

5. Appellants correctly assert that Pete could not serve as one of the jurisdictional five. In *United States v. Bridges*, 493 F.2d 918 (5th Cir. 1974), our court reversed § 1955 convictions where the evidence revealed that four persons were involved for a period of several months, with the fifth joining the enterprise some 18 days prior to the defendants' arrest, on the ground "that Congress intended an illegal gambling business ... to be one which operates with a minimum of five persons for a period in excess of 30 days." *Id.* at 922. As there is no evidence that Pete was involved for more than

a single night, he cannot serve as the fifth person necessary to satisfy the statute's five-person/thirty-day requirement.

6. As stated, Becky Teague was tried with the appellants and acquitted. Her duties at the Hideaway consisted of supervising the other waitresses, tending bar, and serving drinks. Appellants argue that, in acquitting Teague, the jury has determined that a waitress does not conduct a gambling business simply by serving drinks to gamblers. This argument fails for two reasons. First, it misconceives the nature of the question. It is a question of law whether the activities a jury finds a person to have engaged in constitute conducting a gambling business within the meaning of § 1955. Second, the jury's decision to acquit Teague may well have resulted from the fact that neither of the FBI agents (one of whom had been to the club 15–17 times) testified that Teague ever worked in the downstairs portion of the club. In addition, of the four waitresses who testified, only one positively stated that she had

gue that even if the activities of the waitresses were sufficient to satisfy section 1955, none of the waitresses performed such activities on a sufficiently regular basis over a period in excess of 30 days to satisfy the implicit requirement of section 1955, established in *United States v. Bridges*, 493 F.2d 918 (5th Cir. 1974), that five persons be involved for more than 30 days. *See* note 5, *supra.*

■ The question of whether a waitress who serves drinks to gamblers "conducts" an illegal gambling business has not been addressed in this circuit. In other section 1955 cases, however, we have stated that a person conducts an illegal gambling business when he performs a "necessary function" to the operation of the business. *United States v. Avarello*, 592 F.2d 1339, 1349 (5th Cir. 1979); *United States v. Clements*, 588 F.2d 1030, 1039 (5th Cir. 1979); *United States v. McCoy*, 539 F.2d 1050, 1060 (5th Cir. 1976); *United States v. Joseph*, 519 F.2d 1068, 1071 (5th Cir. 1975). Appellants argue that serving drinks is not a function so necessary to the operation of a gambling business that the waitresses may be counted to satisfy the five-person requirement of the statute. For a number of reasons we reject this argument.

First, it must be recognized that the context in which we formulated the "necessary function" test involved prosecutions of arguably independent bookmakers who exchanged line information and placed layoff bets with other arguably independent bookmakers.[7] The question in those cases was whether the second bookmaker was sufficiently connected to the gambling business of the defendant to include the second bookmaker as a participant in the defendant's business for purposes of satisfying the five-person test of section 1955. The teaching of those cases is that bookmakers who regularly engage in layoff betting or in exchanging line information are participants in a common gambling enterprise for purposes of the five-person requirement—

are part of that business—while those who only occasionally do so are not. *E. g.*, *McCoy*, 539 F.2d at 1060–61. The "necessary function" test is thus an appropriate one for determining whether one person or group of people is sufficiently connected with another gambling business to be considered a part of it at all and so properly counted when determining whether the five-person requirement of the statute has been satisfied. Where both enterprises are more or less independently functioning units and the inquiry is whether the degree of their connection is sufficiently profound to permit their being properly viewed as an amalgam for section 1955 purposes, that test is appropriate. That is not the issue here. For here the argument is not that the upstairs nightclub is so functionally connected to the downstairs gambling den that they may appropriately be viewed as one. Instead, the issue posed is subtly different: whether waitresses—persons whose functions are of their nature ancillary to *something*—may be deemed part of a gambling enterprise that they unquestionably serve even though it could function without them. Appellants do not cite, and we have not found, any cases in which the "necessary function" test has been held to exclude a person who unquestionably is employed on a continuous basis by one engaged in the operation of a gambling business and whose duties include serving gamblers directly.

■ That persons other than those who perform functions that are literally necessary to the operation of a gambling business may be considered for purposes of the jurisdictional five requirement is evident from the Supreme Court's opinion in *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). There the Court stated "that 18 U.S.C. § 1955 (1976 ed.) proscribes any degree of participation in an illegal gambling business, except participation as a mere bettor." *Id.* at 70 n.26, 98 S.Ct. at 2182 n.26. In recognition of the

---

ever seen Teague downstairs, and that testimony referred to only one occasion.

7. *See United States v. Joseph*, 519 F.2d at 1070 nn. 2 & 3; *United States v. McCoy*, 539 F.2d at 1059.

breadth of the scope of the term "conduct" in section 1955, at least two circuits have stated that the test is whether the activities performed were necessary "or helpful" to the operation of the gambling business. *United States v. Reeder*, 614 F.2d 1179, 1182 n.2 (8th Cir. 1980); *United States v. Greco*, 619 F.2d 635, 638 (7th Cir. 1980). We find that where ancillaries such as these waitresses are concerned, the necessary-or-helpful test is more consistent with the Supreme Court's language in *Sanabria*, quoted above, and better reflects the intent of Congress "to include all those who participate in the operation of a gambling business, regardless [of] how minor their roles," *Joseph*, 519 F.2d at 1071; accordingly, we adopt that test as the law in this circuit.

Having done so, we have no difficulty finding that waitresses who serve drinks to gamblers, make change for them to use in placing bets in a cash game, and deliver phone messages to them perform functions necessary to or helpful in the operation of a gambling business. In *United States v. Bennett*, 563 F.2d 879 (8th Cir. 1977), the Eighth Circuit reached the same conclusion on similar facts in finding that the services of the waitress there involved "allowed the gamblers to remain at the table and continue placing bets." *Id.* at 883. Indeed, in a very real sense the question of what activities are necessary to or helpful in the operation of a gambling business is answered by the decision of the management of the business to hire someone to perform activities that it deems will contribute to the success of the enterprise.[8]

The second aspect of appellants' argument concerning the five-person requirement is that none of the waitresses at the Hideaway conducted the gambling business on such a sufficiently regular basis—for more than 30 days—as to satisfy the requirement that the gambling business "be one which operates with a minimum of five persons for a period in excess of 30 days." *Bridges*, 493 F.2d at 922. This argument is somewhat troublesome because the indictment charged appellants with operating the gambling business between March 14, 1978, and November 17, 1978, and because none of the four waitresses who testified worked at the Hideaway for at least 31 days during that period.[9] Furthermore, none of the witnesses testified that any other specific waitress worked at the club for 31 days or more during the period defined in the indictment.

While it does not appear from the record that any particular waitress worked the requisite 31 days, it is clear that *a* waitress participated in the gambling business throughout the eight-month period covered by the indictment. Appellant Morton, manager of the Hideaway, testified that he "probably" went to the downstairs part of the club every night he worked to, inter alia, "check on [the] waitress [he] had downstairs" and that he directed waitresses to take drinks downstairs. Morton, as well as a number of other witnesses, also testified that the downstairs part of the club had a separate bar and cash register. Three FBI agents and a customer testified that a waitress served them drinks while

---

8. At oral argument, counsel for appellants argued that a test encompassing all those who perform functions helpful to a gambling business is too broad as it would include such persons as those who make deliveries of liquor to the business. We acknowledge that the necessary-or-helpful test cannot be applied in such an expansive manner. This case, however, does not require us to determine the outer reaches of the test; the waitresses at the Hideaway were employed by those in control of the gambling business to serve the gamblers during the course of their gambling. We find their activities sufficiently related to the operation of the gambling enterprise to come within the broad scope of § 1955.

9. Barbara Ann Pepper testified that she worked at the club "probably about a month off and on in December or November." Joyce Jean Hesterly's testimony was that she worked at the Hideaway for "a couple or two or three months" beginning "approximately about October." While Ms. Hesterly would satisfy the requirement if she began her Hideaway employment on or before October 18, we do not think the jury properly could infer that she did so from her "approximately-about-October" testimony. Susan Meyers testified that she worked at the club during December of 1978, while Lora Renee Sibley testified that she was employed at the Hideaway for about two weeks in October.

they gambled at the Hideaway. Finally, with the exception of one woman who was a dancer as well as a waitress, all of the waitresses who testified said they served drinks downstairs.

■ Thus, the question raised is whether section 1955 is satisfied by evidence that a gambling business was operated by five or more persons for more than 30 days where there is no evidence that the *same* five persons operated the business for more than 30 days. We answer the question in the affirmative for three reasons. First, the language of the statute requires only that the gambling enterprise be one that "involves five or more persons . . . ." 18 U.S.C. § 1955(b)(1)(ii). Evidence that a gambling business is operated by an owner, a manager, two dealers, and a waitress clearly satisfies this requirement.

Second, the policy of section 1955 is "to bring within federal criminal legislation not all gambling, but only that above a certain minimum level . . . ." *Bridges*, 493 F.2d at 922. Our holding in *Bridges* that a gambling business is not illegal under section 1955 unless it "operates with a minimum of five persons for a period in excess of thirty days," *id*, was grounded on this policy of subjecting only substantial—as defined by Congress—gambling businesses to federal regulation. As a gambling business that operates for 31 days with an owner, a manager, two dealers, and a waitress is no more substantial than one that operates for the same 31 days with one waitress working 16 days and another 15 days, there is no basis in the underlying policy of the statute for distinguishing the two gambling businesses. This conclusion is evident from our decision in *United States v. Marrifield*, 515 F.2d 877 (5th Cir. 1975), wherein we affirmed the conviction of a defendant who participated in the business for less than 31 days. The evidence showed that the business had been operated by five or more persons for more than 30 days and that the defendant had replaced a prior participant. We held that "[o]nce the five man/thirty day jurisdictional test is met, it is not necessary that successive individuals joining the enterprise

also engage in it for thirty days . . . ." *Id.* at 882. However, we also made it clear that had the business been reduced in size so that at the time of defendant's participation only four persons were involved, the defendant could not have been convicted under section 1955. The defendant's conviction was affirmed because there had been no reduction in size; rather, for the 31 days preceding defendant's arrest, the business had been operated by five persons, although not by the same five persons. Thus, just as the defendant in *Marrifield* was convicted despite his lack of involvement for 31 days, so the conviction of the appellants in the instant case must be affirmed despite lack of proof that the same five persons conducted the enterprise for the requisite time period.

The third reason we find that section 1955 does not require that the same five persons conduct the business for 31 days is a practical one. A contrary holding would allow well-informed gambling promoters to avoid the reach of section 1955 by rotating employees in such a manner as to prevent having the same five persons operate the business for any 31-day period. For example, in a factual setting such as that presented in this case, if four waitresses were employed, the manager could schedule each to work in the gambling business for consecutive 15-day periods. By doing so, each waitress would participate in the operation of the gambling business for only 15 days out of any two-month period; if the statute were construed to require participation by the same five persons for 31 days, management of the business could avoid application of section 1955 even though its business would be essentially identical with respect to the size and continuity criteria governing application of section 1955 as would a similar business in which a single waitress served the gamblers.

We conclude that a waitress employed, at its option, by a gambling enterprise performs functions necessary to or helpful in the operation of the business and thus conducts the business within the meaning of section 1955. Further, the substantiality

requirement of section 1955 that necessitates a showing of participation of five or more persons for a period in excess of 30 days does not require a showing that the same five persons operated the business for more than 30 days.

### Admissibility of the Government's Bill of Particulars Response

■ In a motion for a bill of particulars, appellants requested the names of all coconspirators; the government responded that "there may have been some girls who worked at the Hideaway and who are unknown to the Government at this time. If the names become available, the government will furnish you this information prior to trial." Three days before trial the government informed appellants' counsel that another man, Pete, may have been involved as a dealer. As previously discussed, at trial an FBI agent did in fact testify that on one occasion Pete dealt at the game.

At the conclusion of the appellants' case, their counsel attempted to introduce the government's response to their motion for the bill of particulars. The evidence was offered as an admission and to impeach the agent who testified about Pete but was excluded by the trial judge as irrelevant. Appellants argue that the response was admissible as indicating that at the time the response was made the government's investigation indicated no other males were involved. The theory apparently presumes that, as trial approached, the government perceived a weakness in its case as to the five-person requirement and thus fabricated Pete's existence. Because the jury acquitted Becky Teague, appellants speculate that the jury determined that waitresses could not conduct gambling businesses and thus based its verdict on Pete's being the fifth person. Thus, appellants reason that evidence tending to show that Pete's existence was fabricated was relevant and that the exclusion of the evidence constitutes reversible error.

There are a number of problems with this argument. Initially, we note that eviden-tiary rulings of this sort are reviewed under the abuse of discretion standard. *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). While the evidence may have been marginally relevant, it is clear that its exclusion is not reversible error. Certainly it is plausible that Pete's existence did not come to light until after the response was prepared during the prosecuting attorney's preparation for trial. Further, as discussed in note 6, *supra*, Teague's acquittal does not indicate that waitresses could not "conduct" the gambling business, and it also fails to indicate the jury's belief that such was the case. There is no reason to believe that the jury verdict would have been different in the absence of any testimony regarding Pete and clearly no reason to believe a different verdict would have been reached had the response been admitted.

### Validity of Search Warrant

■ The FBI investigation of the Hideaway entailed the issuance of a search warrant based on an investigating agent's fifteen-paragraph affidavit. Two of its paragraphs indicated that an ongoing illegal gambling business was being conducted on the premises on the date the affidavit was made, January 15, 1979. In fact, the last observation of the game by an agent occurred on December 5, 1978, and the agents were told after that date that the game had been shut down before Christmas because Horace Hill, the regular dealer, was taking a vacation. The agents were assured, however, that on Hill's return the game would resume. Appellants argue that the search warrant was issued without probable cause because of the two false paragraphs in the affidavit and because the other information contained in the affidavit—relating to observations of the blackjack game between March 14, 1978, and December 5, 1978—was too stale to provide probable cause to believe that gambling paraphernalia could be found at the Hideaway on January 15, 1979, the date the warrant was issued.

These arguments are without merit. The trial judge, in a thorough and well-reasoned order denying appellants' motion to sup-

press, held that, under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the two challenged paragraphs were too conclusory to support a probable cause determination and that the remaining paragraphs were sufficient to evidence the requisite probable cause. Thus, the question of whether, under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the two false paragraphs can be considered in determining whether probable cause existed for the search on January 15, 1979, need not be addressed.

The staleness argument raises the same question as that of whether, absent the two false paragraphs in the affidavit, the remaining paragraphs were sufficient to create probable cause to believe that gambling paraphernalia could be found at the Hideaway on January 15, 1979, the date the warrant was issued. These remaining paragraphs provide detailed descriptions of at least seven different observations of illegal blackjack games being conducted at the Hideaway during the period from March 14, 1978, to December 5, 1978. Whether the lapse of time between the date the affidavit was made (January 15, 1979) and the last observation of the game (December 5, 1978) was sufficient to negate the existence of probable cause on the date of the warrant's issuance "must be determined by the circumstances of each case." *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932).

■ As noted by the trial judge, a primary consideration in evaluating the staleness issue is whether the affidavit describes a single transaction or a continuing pattern of criminal conduct. *E. g., United States v. Weinrich*, 586 F.2d 481, 491 (5th Cir. 1978); *United States v. Hyde*, 574 F.2d 856, 865 (5th Cir. 1978). Here the affidavit described in detail an ongoing criminal operation observed on seven different occasions over an eight-month period. Further, the game was conducted in part of a building occupied by an ongoing business. We have no difficulty determining that a magistrate presented with these facts could determine that probable cause existed to believe gam-

bling paraphernalia could be found at the Hideaway on January 15, 1979, six weeks after the last observation referred to in the affidavit. *See United States v. Scott*, 555 F.2d 522, 528 (5th Cir. 1977).

### Sufficiency of the Evidence as to Morton

■ Appellant Morton argues that the evidence was insufficient to link him to the gambling business. This claim is also meritless. While Morton contends that his duties as manager of the Hideaway were limited to overseeing the operation of the upstairs bar, he testified that he "probably" went downstairs every night he worked. Further, he admitted directing waitresses to take drinks to gamblers downstairs. The testimony of Loree Renee Sibley, another waitress at the Hideaway, that gamblers charged the price of their drinks to their tabs at the upstairs bar indicates that Morton's duties as manager encompassed the downstairs operations; in addition, Morton also testified that the proceeds from all sales of drinks, whether consumed upstairs or downstairs, were combined. Morton also admitted cashing checks for gamblers. Sibley, as well as another waitress, Meyers, testified that Morton's duties included screening customers of the club to determine who could go downstairs and gamble. This evidence clearly was sufficient to support the jury's verdict that Morton did "conduct, finance, manage, supervise, direct, or own" the gambling business within the meaning of section 1955.

For the reasons discussed above, the appellants' convictions are AFFIRMED.