**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Karin D. FOLLIN, John H. Stewart, Broadus V. Stewart, Jr., Donald L. Mason, and Christopher H. Crawford, Defendants–Appellants.**

**No. 91–1550.**

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1992.

---

**10.** *United States v. Quezada,* 754 F.2d 1190, 1194 (5th Cir.1985).

**11.** *United States v. Beaumont,* 972 F.2d 91, 94 (5th Cir.1992).

Sam Wilkins, Jackson, Miss., for Follin.

Rebecca B. Cowan, C.R. Montgomery, Montgomery, Smith–Vaniz & McGraw, Jackson, Miss., for Stewart & Stewart, Jr.

Larry Yarbrough, Jackson, Miss. (Court–appointed), for Mason.

Walter E. Wood, Ridgeland, Miss. (Court–appointed), for Crawford.

Joe M. Hollomon, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for U.S.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and HARMON, District Judge.*

HARMON, District Judge:

This is an appeal of convictions for operating an illegal gambling business and conspiring to do so in violation of 18 U.S.C. §§ 1955 & 2, and 18 U.S.C. §§ 371 & 2. John H. Stewart ("Stewart"), Broadus V. Stewart, Jr. ("Stewart Jr.,"), Donald L. Mason ("Mason"), and Karin D. Follin ("Follin") appeal their convictions, arguing insufficiency of evidence, inadmissibility of evidence and failure to extend immunity to a defense witness. Christopher H. Crawford appeals from both his conviction and his sentence. We affirm the appellants' convictions and Crawford's sentence in all respects.

* District Judge of the Southern District of Texas, sitting by designation.

## I.

### A. The Jurisdictional Five

■ Between September 27, 1990, and November 7, 1990, a gambling investigation was conducted by the FBI, the Mississippi Attorney General's Office and the Criminal Investigation Bureau of the Mississippi Highway Patrol. Officers undertook surveillance of an illegal gambling casino operating at Stewart Lodge in Canton, Mississippi. In furtherance of the investigation, Officer Bullock visited the casino eight times during that period. He observed four men, Stewart, Stewart Jr., Crawford, and Mason, operating blackjack and craps tables. Also present at the Lodge was Follin.

A sixth person, later identified as Herbert McMullen, assisted with the craps table and at times stood watch on October 24, 1990. Stewart Jr., who normally worked the tables, was not present on that night. That night Bullock observed approximately fifteen to eighteen thousand dollars change hands during the time he was in the illegal casino.

Title 18 U.S.C. § 1955 requires proof that five or more persons were participating in an illegal gambling operation and that either the business was in substantially continuous operation for thirty days or more, or that the operation had gross revenues of two thousand dollars or more in a single day. *U.S. v. Aucoin*, 964 F.2d 1492, 1499 (5th Cir.1992).

Stewart, Stewart Jr., Crawford, and Mason do not dispute their role in the operation, but contest the application of the criminal gambling statute. They contend that as the only operators of the casino the government cannot convict them under a statute that requires an illegal gambling business to "involve five or more persons [1] who conduct, finance, manage, supervise, direct, or own all or part of such business." 18 U.S.C. § 1955(b)(1)(ii). They argue that Follin, the fifth defendant convicted with them, was merely a bettor.

1. The case law often refers to the "five or more person" standard as the "jurisdictional five" requirement.

Section 1955 "proscribes *any degree of participation* in. an illegal gambling business, except participation as a mere. bettor." *Sanabria v. United States*, 437 U.S. 54, 70 n. 26, 98 S.Ct. 2170, 2182 n. 26, 57 L.Ed.2d 43 (1978) (emphasis supplied).

Section 1955's coverage is broad. All persons providing services that are necessary or helpful to the gambling operation come within its scope. *United States v. Colacurio*, 659 F.2d 684, 688 (5th Cir.1981), *cert. denied*, 455 U.S. 1002, 102 S.Ct.· 1635, 71 L.Ed.2d 869 (1982); *United States v. Tucker*, 638 F.2d 1292, 1295 (5th Cir.1981), *cert. denied*, 454 U.S. 833, 102 S.Ct. ·132, 70 L.Ed.2d 111 (1981).... [A]ctivities exceed[ing] those of "mere bettors" ...· fall outside section 1955's "sanctuary of bettordom." *United States v. Box*, 530 F.2d [1258], 1276 [ (5th Cir.1976) ].

*United States v. Jones*, 712 F.2d 115, 120–21 (5th Cir.1983). The design of "section 1955 is 'to bring within federal· criminal legislation not all gambling, but only that above a certain minimum level....'" *U.S. v. Tucker*, 638 F.2d at 1297 (citing *United States v. Bridges*, 493 F.2d 918, 922 (5th Cir.1974)). Yet, the clear intent of Congress was to include all those who "participate in the operation of a gambling business, regardless [of] how minor their roles." *Id.* at 1296 (citing *United States v. Joseph*, 519 F.2d 1068, 1071 (5th Cir.1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976)). *See also United States v. Rieger*, 942 F.2d 230, 234 (3rd Cir.1991).

 Unlike the other defendants Follin did not operate a gambling table, and she was not a paid employee.[2] She was observed, however, serving drinks, cooking steaks,. wiping off kitchen counters, and examining the dice. On several occasions she wagered bets.[3]

Bullock's notes only mention that Follin examined the dice on one occasion. On the stand Bullock tried to attribute another such episode to Follin, but, although he was familiar with Follin, he called her in his notes an "unidentified white female." Defendants contend that that incident cannot be attributed to Follin. At trial Bullock also testified to other acts performed by Follin, which were not mentioned in his investigative notes. Defendants hotly contested this testimony because Bullock's notes are very detailed, and it would be uncharacteristic for the investigator to have omitted such facts from them.[4]

The appellants maintain that Follin's activities were no different from those of the other bettors. All patrons, it is argued, would get each other drinks, cook steaks, and examine the dice should. they fall nearest that person; as a mere bettor Follin cannot be used to trigger the jurisdictional requirements of the statute since she did not conduct or direct the illegal gambling operation. The central issue involved in this appeal is whether the jury could have found, under the facts presented, that Follin was not a mere bettor, but in fact was helpful to gambling operations. The government's response is that Folin, unlike other bettors, was present at the casino from its inauguration until its operations were terminated. The Government further contends that any individual, regardless of the standard practice in the game room at the time, who consistently performs duties so as to facilitate the gambling operation is subject to prosecution under § 1955.

Appellants' arguments to the contrary, it is clear that through her aggregate con-

---

**2.** The government need not prove that Follin was compensated in order to obtain a conviction for her role in the gambling activity. *United States v. Merrell*, 701 F.2d 53, 54 n. 1 (6th Cir.), *cert. denied*, 463 U.S. 1230, 103 S.Ct. 3558, 77 L.Ed.2d 1415 (1983) (citing *United States v. Rowland*, 592 F.2d 327 (6th Cir.1979)).

**3.** Follin gambled with her own money on a few occasions, but the record reflects that on most occasions she did not gamble. Follin neither received chips from the operators, nor did she receive chips from other gamblers. However, she would roll the dice for others and keep the proceeds if she won.

**4.** Their argument must fail since "[i]ssues of credibility, the weight of the evidence, and conflicts in evidence are matters for the jury." *United States v. Ortega–Chavez*, 682 F.2d 1086, 1091 (5th Cir.1982) (citing *United States v. Parr*, 516 F.2d 458, 464 (5th Cir.1975)).

duct Follin was more than a "mere bettor" and subject to prosecution under federal gambling statutes. Follin could be used to establish the jurisdictional five requirement.

Appellants rely on *United States v. Merrell,* 701 F.2d 53 (6th Cir.), *cert. denied,* 463 U.S. 1230, 103 S.Ct. 3558, 77 L.Ed.2d 1415 (1983), and *United States v. Boss,* 671 F.2d 396 (10th Cir.1982).[5] Their reliance on these cases is misplaced. The facts of this case closely approximate those in *Merrell.* In the instant action the jury heard testimony that Follin wagered bets, served drinks, cooked steaks for those in attendance, and cleaned the kitchen on occasion. In *Merrell,* the defendant served coffee during gambling operations, but also stacked tables, swept the floors, and cleaned ash trays. 701 F.2d at 54. The Sixth Circuit, relying on our seminal decision in *United States v. Tucker,* found that when a defendant serves coffee, thereby enabling bettors to continue wagering without interruption, the defendant's actions clearly aided the gambling operation. *United States v. Merrell,* 701 F.2d at 55 (citing *Tucker,* 638 F.2d at 1296). The *Merrell* Court held that "persons who regularly aid gambling enterprises should be subject to prosecution under section 1955 even though their conduct may not strictly be necessary to the success of such businesses." *United States v. Merrell,* 701 F.2d at 55. The Sixth Circuit indicated that those who regularly and consistently perform functions that aid illegal gambling can be distinguished from mere bettors who serve drinks or clean up in isolated instances. *Id.* No bright line can be drawn as to what is "necessary or helpful" in all instances; such a determination depends on the facts in a given situation and the evidence presented to the jury. The evidence supports the jury's determination that Follin's activities went beyond the realm of a mere bettor. Looking at the testimony in a light most favorable to the

verdict, there is evidence that Follin engaged in activities that were helpful to the operation of the casino. We have determined that the statute proscribes any degree of participation in a gambling operation except participation as a mere bettor. *United States v. Tucker,* 638 F.2d 1292, 1295 (5th Cir.1981), *cert. denied,* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). Viewing the evidence in the light most favorable to the Government "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *United States v. Zapata–Alvarez,* 911 F.2d 1025, 1026 (5th Cir.1990).

**B. Immunity and McMullen's Photograph**

■ In order to controvert testimony that McMullen was present on October 24, the appellants produced Robert Tadlock who swore that McMullen was not present in Canton on October 24, 1990, but at the time was enroute with him from Frisco City, Alabama.

A photograph was taken of McMullen and tendered to the defense the morning of trial. Crawford moved to exclude the photo from evidence because the government's failure to notify him of the photograph's existence was unfairly prejudicial. The district court, viewing the objection as technical, overruled the motion.

McMullen was initially listed as a witness for the prosecution. When the government did not call him to testify, the defense sought to call him. McMullen then invoked his Fifth Amendment rights and refused to testify. The appellants argue that the district court should have extended immunity to McMullen and ordered him to testify.

Stewart, Stewart Jr., Crawford, and Mason also seek a judgment of acquittal or a new trial because the trial court refused to

---

**5.** *United States v. Boss,* has not been followed by those circuits using the necessary or helpful test. *See United States v. Hammond,* 821 F.2d 473, 476 (8th Cir.) (individual conducted illegal gambling business by supplying paper to bettors and

allowing phone to be used in gambling operation), *cert. denied,* 484 U.S. 986, 108 S.Ct. 502, 98 L.Ed.2d 501 (1987); *see also United States v. Merrell,* 701 F.2d at 55.

hold an evidentiary hearing on McMullen's invocation of his Fifth Amendment privilege.

We need not discuss at length appellants' arguments relating to the admission of the photograph and the district court's determination not to extend immunity to McMullen since, using twenty-twenty hindsight, this portion of the case was not ultimately essential to the jury's determination. This is so because the jury rendered a verdict against each of the five appellants. Since each of the five appellants was convicted of operating or conducting a gambling business the jurisdictional five requirement was established; when the jury found Follin guilty of conducting a gambling business, the government's need to establish a sixth § 1955 person evaporated.

During the course of deliberations the jury delivered three notes to the Court.[6] The defense asserts that the very substance and nature of the notes tend to show that the jury was struggling with their task. The jury then returned a guilty verdict against all five defendants.

The jury's questions demonstrate that, while during their deliberation they considered McMullen's application to the case, the jury was ultimately satisfied that the requirements of the statute were met. They evidenced their satisfaction by convicting all five defendants.

Nevertheless, the district court did not err. The question in this case is whether the district court properly investigated the legitimacy and scope of the privilege as it extended to McMullen, and then having sustained the privilege protection, did the district court err in not granting McMullen immunity. The standard of review for the invocation of a Fifth Amendment privilege is whether the trial court abused its discretion. *United States v. Metz*, 608 F.2d 147, 156 (5th Cir.1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980). In light of the fact that McMullen was appre-

hensive at the prospect of being prosecuted the district court, having heard testimony on the subject, did not err in allowing McMullen to invoke the privilege inasmuch as "an accused's right to compulsory process must give way to the witness' Fifth Amendment privilege not to give testimony that would tend to incriminate him." *United States v. Boyett*, 923 F.2d 378, 379 (5th Cir.), *cert. denied*, ―― U.S. ――, 112 S.Ct. 53, 116 L.Ed.2d 30 (1991) (citing *United States v. Khan*, 728 F.2d 676, 678 (5th Cir.1984)).

■ District Courts have no inherent power to grant immunity. A district court may not grant immunity simply because a witness has essential exculpatory evidence unavailable from other sources. *United States v. Thevis*, 665 F.2d 616, 638–41 (5th Cir.), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). However, judicially ordered immunity may be sanctioned to stem governmental abuse. *See United States v. Thevis*, 665 F.2d at 640–41. Appellant argues that McMullen should have been granted immunity because his refusal to testify was the result of prosecutorial misconduct. Brief of Appellant Christopher Crawford at p. 25. The record does not support the appellants' allegations. The trial court addressed counsel on this very issue and defense counsel replied that he was not pressing forward with the allegation. This claim does not warrant further discussion. The trial court did not err in failing to extend immunity to McMullen.

■ Turning to the admissibility of the photograph Crawford argues that the district court abused its discretion because it allowed the Government to introduce a photograph of McMullen that was not presented to defense counsel until the morning of the trial. He contends the photograph should be excluded as its receipt into evi-

---

6. The first question read: "If we do find five persons guilty of the two charges but one is not listed, does this mean that [we] find all of the five listed guilty?" The second jury question read: "If we find one or more persons to be guilty on the evidence presented, does it mean that any of the other persons are guilty by association?" The last question read: "If we find the man in the picture is the fifth person but we can't ID?" The appellants have no quarrel with the responses of the trial judge.

dence violated the discovery order and prejudiced his defense.

■ The standard of review on appeal for the admissibility of evidence is whether the trial court abused its discretion. *United States v. Westmoreland*, 841 F.2d 572, 578 (5th Cir.), *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988); *United States v. Stephenson*, 887 F.2d 57, 59 (5th Cir.1989), *cert. denied;* 493 U.S. 1086, 110 S.Ct. 1151, 107 L.Ed.2d 1054 (1990). Although the photograph was taken on the Saturday prior to the Monday trial commencement, the developed photograph was not given to the prosecutor until Monday morning. It was then immediately proffered to defense counsel. The discovery order provided for continuing discovery of items which came into the government's possession. The district court did not abuse its discretion by permitting the Government to introduce the photograph of McMullen since the record demonstrates that as soon as it came into the prosecutor's possession, the prosecutor provided the photograph to the defense.

## II.

### Sentencing Guidelines

Crawford objects to his sentence arguing that he was entitled to receive a two point offense level reduction as a minor participant and that two D.U.I. convictions should not have been used to enhance his criminal history category.

Our review of a sentence under the guidelines is "confined to determining whether a sentence was 'imposed in violation of the law' or 'as a result of an incorrect application of the sentencing guidelines.' " *United States v. Nevarez-Arreola*, 885 F.2d 243, 245 (5th Cir.1989) (citing 18 U.S.C. § 3742(e)). We affirm applications of the guidelines when they are based on factual findings that are not clearly erroneous. *Id.* "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir.1991).

*United States v. Shipley*, 963 F.2d 56, 58 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992).

### 1. Minor Participant

■ The court's finding that Crawford was not merely a minor participant was not clearly erroneous. Trial testimony reflects that Crawford held various positions in the enterprise. Crawford was present in the casino every night and took part in the operation by working the craps table, dealing blackjack, and admitting bettors to the casino. He is not entitled to a reduction. A defendant's participation is not minor unless he is "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, Comment. (backg'd.). The record contains ample support for the court's finding that Crawford was not a minor participant. We will not disturb that finding.

### 2. Criminal History Score

■ Crawford's second objection to the sentencing guidelines is that his two uncounseled misdemeanor DUI convictions should not have been used to increase his criminal history category. We have recognized that the sixth amendment guarantee of counsel is one of the "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." *United States v. Eckford*, 910 F.2d 216, 218 (5th Cir.1990), *reh'g denied,* 915 F.2d 695 (5th Cir.1990) (quoting *Powell v. Alabama*, 287 U.S. 45, 67, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932)). The sixth amendment, however, requires only that "no indigent criminal defendant be sentenced to a *term of imprisonment* unless the Government has afforded him the right to assistance of counsel." *Id.* at 218 (emphasis in original) (quoting *Scott v. Illinois*, 440 U.S. 367, 374, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979)). "Thus, conviction of an uncounseled criminal defendant is constitutionally permissible, so long as the defendant is not sentenced to a term of imprisonment." *Id.*

Crawford relies on the four concurring opinions in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), for the proposition that a court cannot use

an uncounseled misdemeanor conviction to enhance a punishment. Justice Blackmun's independent concurrence noted that enhancement for an uncounseled misdemeanor conviction is improper where the misdemeanor offense is punishable by a period of more than six month's imprisonment. Id. at 230.

We have since determined that *Baldasar* is of little guidance given the inconsistencies of the opinion and the slim majority. *United States v. Eckford*, 910 F.2d at 219 (citing *Schindler v. Clerk of Circuit Court*, 715 F.2d 341, 345 (7th Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984)). In *Wilson v. Estelle*, 625 F.2d 1158 (5th Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1985, 68 L.Ed.2d 302 (1981), we determined that a defendant's two prior uncounseled misdemeanor convictions, for which he received no term of imprisonment, were valid for all purposes.[7] *Id.* at 1159; *United States v. Eckford*, 910 F.2d at 220. *Baldasar* was basically limited to the premise that "a prior uncounseled misdemeanor conviction may not [be] used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term." *United States v. Eckford*, 910 F.2d at 220 (quoting *Wilson v. Estelle*, 625 F.2d at 1159 n. 1).[8]

In *Eckford*, two prior uncounseled misdemeanor convictions with maximum penalties of not more than six month's imprisonment, but no actual incarceration, were used to increase the defendant's maximum potential sentence by four months. *United States v. Eckford*, 910 F.2d at 217. Crawford's case can only be distinguished from *Eckford* in that Crawford's second misdemeanor DUI conviction carried a maximum sentence of a year imprisonment. *United States v. Eckford*, 910 F.2d at 219 n. 8. Under Blackmun's concurrence in *Baldasar*, the trial court could not use the second uncounseled conviction to increase the criminal history level. However, Crawford received a two day suspended sentence for his second DUI conviction, and under the sentencing guidelines a sentence of imprisonment does not include any portion of a sentence that was suspended. U.S.S.G. § 4A1.2(b)(2).

### III.

For the reasons discussed above, the judgment and sentence of the trial court is AFFIRMED.

---

**7.** We note that an uncounseled conviction is not necessarily constitutionally invalid since, for example, the defendant may have waived the right to counsel. Yet, if a defendant shows that a conviction was previously ruled constitutionally invalid it may not be counted in the criminal history score. U.S.S.G. § 4A1.2, comment (n. 6). We have previously held that the application note 6 "allows a district court, in its discretion, to inquire into the validity of prior convictions at sentencing hearings." *United States v. Canales*, 960 F.2d 1311, 1315 (5th Cir.1992).

After reviewing the statements of the district court at the sentencing hearing, it is obvious that the court did not allow the challenge. The court found Crawford's argument, that his previous DUI convictions were constitutionally invalid, not well taken. Since "a court is only *required* to exclude a prior conviction from the computation of the criminal history category if the defendant shows it to 'have been previously ruled constitutionally invalid," *United States v. Canales*, 960 F.2d at 1315 (emphasis in original), the district court did not err when it ruled, citing *Eckford*, that the second DUI conviction could not be constitutionally invalid since there was no imprisonment.

**8.** Calculating Crawford's criminal history by relying on a prior uncounseled misdemeanor is permissible; it is an entirely different issue than the one raised in *Baldasar*. In the case at hand, the court used an uncounseled DUI conviction to determine a criminal history category for a crime that was a felony; it was not used to enhance a misdemeanor into a felony. *United States v. Castro–Vega*, 945 F.2d 496, 500 (2nd Cir.1991), *petition for cert. filed*, No. 91–6933 (January 8, 1992).