151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
United States of America, Plaintiff-Appellee,
v.
Art MOWE, Defendant-Appellant.
 No. 96-1743.
 United States Court of Appeals, Seventh Circuit.
 Argued April 29, 1998.
Decided May 19, 1998.
 
 Appeal from the United States District Court for the Southern District of Illinois. No. 95 CR 30024 William D. Stiehl, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, Hon. DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Art Mowe was convicted of violating 18 U.S.C. § 1955, which makes it a federal crime to conduct, manage, supervise, direct, or own all or part of a gambling business in violation of the law of the state in which the gambling business is conducted. On appeal, he contends that the district court erred: a) in finding that he was involved in a gambling business for purposes of determining his base offense level at sentencing; b) by denying his motion for a reduction as a minor participant in criminal activity; and c) by imposing a sentencing enhancement for obstruction of justice. We affirm.
 
 
 2
 Mowe operated a tavern called C-Mowes, located in southern Illinois. In the bar were seven video gambling machines supplied by a company called B & H Vending / Ace Music Corp. ("B & H"), owned by co-defendant Tom Venezia. The evidence at trial revealed that B & H provided between 150 and 170 video gambling machines to bar owners at twenty-seven locations throughout the Belleville-East St. Louis, Illinois, area. The machines were placed at taverns with the understanding that the owners would make payouts to winning players in order to generate gambling proceeds. On a weekly basis, B & H collectors ("routemen") would recover the proceeds from the machines at each tavern, first reimbursing the bar owners for the payouts, then splitting the remaining cash 50/50 with each owner. Testimony established that C-Mowes was "one of the best stops" that B & H had, and that Mowe made a substantial amount of money for B & H: in excess of $700,000, as Mowe's counsel conceded at argument. Testimony by Mowe's routemen further established that Mowe customarily engaged in "payouts and splits."
 
 DISCUSSION
 A. Gambling Offense Guideline Issues
 
 3
 At sentencing, the district court found, "This is a gambling business. Mr. Mowe was a party to that business, and in the sense that he participated in it with the rest of the group, ... I think it fits precisely in [subsection] Al of [U.S.S.G. § ] 2E3.1."
 
 
 4
 Subsection 2E3.1(a) of the Sentencing Guidelines provides for a base offense level of twelve "if the offense was (A) engaging in a gambling business ... or (C) committed as part of, or to facilitate, a commercial gambling operation"; and a base offense level of six "otherwise." Because subsection 2E3.1(a)(1) is disjunctively phrased, the court may impose an offense level of twelve if it finds by a preponderance of the evidence that an offender has engaged in conduct described in either subsection (a)(1)(A) or (a)(1)(C). While it is not entirely clear which of the two subsections was utilized by the sentencing court, a review of the trial transcript reveals ample evidence upon which to sustain Mowe's sentence under either subsection. See United States v. Marshall, 83 F.3d 866, 866-67 (7th Cir.1996) (this court may affirm the district court's sentence on any basis supported by the record); United States v. Mustread, 42 F.3d 1097, 1104 (7th Cir.1994) (same).
 
 
 5
 Mowe acknowledges that co-defendant Venezia's machines were placed at C-Mowes, that C-Mowes was one of the stops maintained by Venezia, and appears to concede that Mowe was an active participant in the gambling operation that took place at his tavern. He argues that subsection 2E3.1(a)(1)(C), which applies to gambling offenses "committed as part of, or to facilitate, a commercial gambling operation," was improperly applied by the district court because Mowe had no financial interest in the gambling machines nor was he Venezia's employee. His argument, however, is unsupported either by the record or by relevant case law.
 
 
 6
 Under any reasonable interpretation of the phrase, Venezia's was a "commercial gambling operation." U.S.S.G. § 2E3.1(a)(1)(C); see also United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); Perez v. United States, 402 U.S. 146, 150, 154-55, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); United States v. Zizzo, 120 F.3d 1338, 1350-51 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 566, 139 L.Ed.2d 406 (1997). Testimony at trial established that the operation collected an estimated $36,885,682 in illegal gambling receipts between 1988 and 1993; that B & H employees transported the gambling machines from Illinois to Missouri for illegal modification; that repairmen were dispatched as needed; and that traveling "bankers" carrying beepers for communication and guns and deputy marshals' badges for protection were available to supply the owners with cash advances when large payouts were necessary. A routeman further testified that Venezia's gambling enterprise operated during the entire five years in which he worked for B & H; that it operated for a continuous 30-day interval during that five-year period; that he collected at least $2,000 in gross gambling revenues in any one day; and that there were five or more persons involved in the gambling business who were employed by or associated with B & H. See 18 U.S.C. § 1955(b)(1).
 
 
 7
 Based on the plain language of the guideline, see In re Merchants Grain, 93 F.3d 1347, 1353-54 (7th Cir.1996), cert. denied, 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997), the evidence also establishes that the gambling at C-Mowes was "committed as part of, or to facilitate" Venezia's operation, U.S.S.G. § 2E3.1(a)(1)(C). Routemen testified that the taverns supplied the customers, the space and the electricity to operate the machines, while B & H furnished the gambling machines, the service, and the front money needed to maintain the operation. Mowe likewise engaged in payouts and splits. That he did not maintain an ownership interest in the gambling machines or was not an employee of B & H is irrelevant, since neither the language of the guideline nor the settled case law interpreting 18 U.S.C. § 1955 requires such a relationship. See 18 U.S.C. § 1955(a); see also Sanabria v. United States, 437 U.S. 54, 70-71 & n. 26, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Follin, 979 F.2d 369, 372-73 (5th Cir.1992); United States v. Merrell, 701 F.2d 53, 54-55 (6th Cir.1983); United States v. DeCesaro, 502 F.2d 604, 611 (7th Cir.1974).
 
 B. Minor Participant
 
 8
 Mowe next contends that the district court erred in denying his motion for a two-level downward sentencing departure because he was a "minor participant in the Venezia operation." See U.S.S.G. § 3B1.2(b). He argues that "[o]ne of 25 stops, and seven out of 145" gambling devices is minor participation for sentencing purposes, but acknowledges that he was prosecuted for and convicted of gambling "at a single location."
 
 
 9
 Mowe's argument is without merit. Though Mowe was acquitted of racketeering conspiracy, see 18 U.S.C. §§ 1962(c)-(d); United States v. Morgano, 39 F.3d 1358 (7th Cir.1994), he admits he was convicted of conducting, managing, supervising, directing or owning all or part of a gambling business in violation of Illinois law, see 18 U.S.C. § 1955(a). He also admits that illegal gambling took place at C-Mowes. See 720 ILCS 5/28-1-2 (West 1997). Because the relevant inquiry is "whether the defendant was a minor participant in the crime for which he was convicted, not whether he was a minor participant in some broader conspiracy that may have surrounded it," United States v. Brown, Nos. 97-2351 & 97-2374, slip op. at 14 (7th Cir. Feb. 25, 1998), Mowe's discussion of his role and relative position in Venezia's operation is largely irrelevant: he can hardly claim that he was a minor participant in his own criminal conduct. See United States v. Lampkins, 47 F.3d 175, 180-81 (7th Cir.1994). To the extent that Mowe is suggesting that he is eligible for a sentencing departure as a minor participant because the jury convicted him only of "conduct[ing] ... part of an illegal gambling business" owned by Venezia, 18 U.S.C. § 1955(a), his claim is unsupported by the facts. There was testimony that C-Mowes was "one of the best stops"--indeed, that it was one of the "top five" stops--on the B & H routes. That Venezia may have made more money from the gambling operation than did Mowe does not render Mowe a minor participant for purposes of the Sentencing Guidelines.
 
 
 10
 Because Mowe failed to come forward with evidence of his eligibility for the sentencing reduction, see Brown, Nos. 97-2351 & 97-2374, slip op. at 14, there is no basis on which to disturb the district court's decision to deny him that reduction.
 
 C. Obstruction of Justice
 
 11
 Mowe argues that the district court erred by awarding him a two-level sentencing enhancement for obstruction of justice. He does not deny that he requested routeman Mark Vernia to sign an untruthful statement concerning the payouts and splits. Mowe contends instead that because the evidence was overwhelming that he (like the other tavern owners) engaged in this illegal practice, his effort to conceal such conduct does not rise to the level of obstruction.
 
 
 12
 Section 3C1.1 of the Guidelines provides a two-level sentence enhancement if in relevant part, "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation ... of the instant offense." U.S.S.G. § 3C1.1 (emphasis added). The enhancement applies where the defendant unlawfully influences or attempts to influence a co-defendant or witness, attempts to produce a false document, and further includes "any other obstructive conduct in respect to the official investigation ... of the instant offense." Id. at § 3C1.1 & comment. (nn.3(a), (c)). Finally, the guideline defines a "[m]aterial ... fact, statement, or information" as a fact, statement or information "that, if believed, would tend to influence or affect the issue under determination." Id. at § 3C1.1, comment. (n.5).
 
 
 13
 It was Routeman Mark Vernia's unchallenged testimony that four to five months after the government raided the B & H sites and seized the video gambling devices, Mowe attempted to induce him to sign a letter stating that Vernia "took all of the money out of [Mowe's] machines and turned it in" to B & H, that is, that Mowe did not engage in the practice of illegal payouts and splits. This circuit has concluded that an attempt to influence the testimony of potential witnesses or co-defendants falls within the arc of conduct proscribed by subsection 3C1.1. See, e.g., United States v. Emerson, 128 F.3d 557, 563 (7th Cir.1997); United States v. Friend, 104 F.3d 127, 130-31 (7th Cir.1997); United States v. Cherif, 943 F.2d 692, 703 (7th Cir.1991). Furthermore, if Mowe's story were believed, it would "tend to influence or affect" the question of whether he knowingly engaged in illegal gambling or whether, as he attempted to portray himself, he was an innocent employee at his daughter's tavern. U.S.S.G. § 3C1.1, comment. (n.3). Mowe's effort to "concoct a common story [goes] ... 'to the very heart of the case," ' Emerson, 128 F.3d at 563 (internal quotation and citation omitted), and is material both with respect to Mowe's efforts to portray himself as a minor participant, see U.S.S.G. § 3B1.2(b), as well as his eligibility for the "otherwise" clause of the gambling offenses guideline, id. at § 2E3.1(a)(2). His fabricated letter thus contained a "material" untrue fact, statement or information; as such, his attempt to induce routeman Mark Vernia to sign the "false document" is sufficiently obstructive to merit the sentencing enhancement he received. Id. at § 3C1.1, comment. (nn.3, 5).
 
 AFFIRMED